JiTHIBODEAUX, Judge.
Defendant, Justino Zabaleta, pled guilty to one count of possession of cocaine weighing over 400 grams in violation of La.R.S. 40:967(C) and (F). He was sentenced to twenty-five years at hard labor to run consecutively with his previous Texas sentence. The first fifteen years is without benefit of probation, parole, or suspension of sentence.
^Zabaleta appeals the trial court’s denial of his motion to reconsider sentence or to withdraw his guilty plea. He also asserts that his sentence is cruel, unusual and excessive.
We disagree and affirm.

FACTS

On August 18, 1993 at approximately 1:40 a.m., a Lake Charles Police Department Officer clocked a 1993 Buick bearing a Texas license plate at a speed of 61 m.p.h. in a 50 m.p.h. zone. The vehicle was stopped. The officer spoke with the driver, Edwin Osorio, and two passengers, Mina Boliva and Justino Zabaleta. After obtaining a consent to search, the officer searched the vehicle and found approximately 5.1 pounds of cocaine. All three individuals were arrested and transported to the Lake Charles Police Department for booking.

ASSIGNMENT OF ERROR NO. 1

By his first assignment, defendant claims the trial court erred in denying his motion to reconsider sentence or to withdraw guilty plea. In that motion, defendant made the following prayer for relief:
Wherefore, mover prays that because he reasonably relied on statements made to him by his attorney prior to his guilty plea that a specific recommendation would be made to the Court regarding his sentence which never materialized that the Court reconsider his sentence and impose a sentence of fifteen years at hard labor or in the alternative allow him to withdraw his guilty plea of November 28,1994.
In his brief, defendant claims he thought his attorney and the state would jointly recommend to the trial court a sentence of fifteen (15) years. In reliance on this belief, defendant changed his plea from not guilty to guilty as charged. The defendant further argues:
_jj¡The evidence is clear and uncontrovert-ed that Mr. Zabaleta’s attorney told him prior to his guilty plea that a sentence recommendation of fifteen years would be made by the state and his counsel to the trial judge if he changed his plea to guilty. At the contradictory hearing on Defendant’s Motion to Reconsider Sentence or To Withdraw Guilty Plea in the Alternative three witnesses testified to that fact: Dr. Harcourt Stebbins, the English/Spanish translator, who had worked with the Defendant and his attorney on prior occasions, including the guilty plea on November 28, 1994, and sentencing January 26, 1995 (R.pp. 143-44 and 148); The Defendant, Justino Zabaleta (R.pp. 155-59); and Defendant’s Attorney, Ronald F. Ware (R.pp. 166-74).
Dr. Harcourt Stebbins, the interpreter serving at defendant’s guilty plea, testified at the hearing on defendant’s motion to reconsider sentence or to withdraw guilty plea. When asked by defense counsel what he (Dr. Stebbins) told defendant as far as the plea negotiations, Dr. Stebbins replied, “My interpretation of it was that there would be a recommendation for 15 to 30 years and that would be brought to the Court’s attention.” Dr. Stebbins further testified that he (Dr. Stebbins’) told defendant there would be a specific recommendation of fifteen (15) years.
On cross-examination, Dr. Stebbins stated that although he thought to the best of his recollection that defendant was told there would be a joint recommendation of fifteen *1223 (15) years, he was not sure. Dr. Stebbins further testified that he received this information from Mr. Ware. When asked if he ever heard the district attorney tell defense counsel that the state would recommend a fifteen (15) year sentence, Dr. Stebbins responded that he had not. Dr. Stebbins was also asked about the following colloquy which took place at the guilty plea hearing:
The Court: Okay. Now, I’ve been told that there will be a joint recommendation — there will not be one. I thought there was.
Mr. Clemons: No, Judge.
The Court: Okay.
Dr. Stebbins: Is there a joint or not?
|4Mr. Ware: There is not.
The Court: No, there’s not. No.
When asked at the motion to withdraw guilty plea hearing how he translated the above colloquy to the defendant at the guilty plea hearing, Dr. Stebbins testified that to the best of his recollection, he interpreted to defendant that there would be no recommendation.
The defendant, Justino Zabaleta, also testified at the motion to withdraw guilty plea hearing. Defendant’s attorney asked defendant if he remembered his attorney trying to negotiate a plea bargain for him. Defendant replied that he did. Defendant further testified that his attorney told him the plea bargain was fifteen (15) years, that being part of the reason he pled guilty. Defendant also stated that his prior criminal conviction was something he considered in deciding whether to plead guilty. Finally, defendant testified that when he pled guilty he expected a joint sentence recommendation of fifteen (15) years to be made to the court.
On cross-examination, the district attorney asked defendant, “Isn’t it true that Mr. Ware told you that he was trying to get 15 years as a plea bargain?” Defendant replied, “No, he — he told me it was 15 years as a plea bargain.” Defendant also testified that Mr. Ware, his attorney, told him the district attorney was going to recommend fifteen (15) years. Defendant further testified as follows:
Q: Mr. Zabaleta, when you pled guilty— do you recall Judge Godwin asking me and Mr. Ware whether there was going to be a joint recommendation?
A: Si’.
A: (By Dr. Stebbins [interpreter]) Yes.
Q: And you remember both of us telling him, no, there would be no joint recommendation?
A: (By Dr. Stebbins) Yes, I do.
|SQ: Okay. So, you knew when you pled guilty there was no joint recommendation? A: (By Dr. Stebbins) Yes, but I had been led to believe that it was going to be a 15-year joint recommendation.
Q: Okay. That’s what you were led to believe?
A: No. (Then speaks in Spanish).
A: (By Dr. Stebbins): No, that’s what I’ve been told by my lawyer.
Q: Okay. But you found out from the Judge that there was going to be no recommendation, correct?
A: (By Dr. Stebbins): Yes.
Q: And you continued anyway with your guilty plea, correct?
A: (By Dr. Stebbins): Yes.
Q: At any point did you tell Dr. Stebbins, Judge Godwin, or Mr. Ware, I don’t want to plead guilty because I thought I was getting 15 years?
A: No. (Then speaks in Spanish).
A: (By Dr. Stebbins) No, I never did.
The last witness to testify at defendant’s motion to reconsider sentence or to withdraw guilty plea was defendant’s attorney, Ronald Ware. Mr. Ware gave the following testimony:
Q: Do you recall what you finally told Mr. Zabaleta and asked Dr. Stebbins to translate with regard to any plea agreement that had come to fruition during this protracted period of negotiations?
A: Yes, sir. After talking with Mr. Clemons, and I’ll have to admit that I don’t recall exact ... — I’m not saying that Mr. Clemons did — did at that time make the promise to make the recommendation to me and now accuse him that — of taking it back. That is not what this is about, but I *1224 did distinctly go back to Mr. Zabaleta and tell him that there would be sentence — a joint sentence recommendation of 15 years that would be recommended to the Court, and I thought — advised him that I thought that since it was — it was going to be a joint | ^recommendation, that there was every reason to believe that that would, in fact, be the sentence of the Court.
Q: Do you have any recollection, Mr. Ware, of ever telling Mr. Clemons that you had told that to Mr. Zabaleta?
A: Yes. When we came for sentencing— Q: Well, let me stop you. I was referring to the same time frame of the negotiations prior to plea, do you recall ever saying that to Mr. Clemons?
A: Not distinctly. It’s my normal custom—
[Objection by district attorney, which was sustained]
A: I have a vague recollection of actually telling him that we will plead guilty, with the understanding there will be a 15-year joint sentence recommendation.
Q: Is it fair to say that you are more sure you told Mr. Zabaleta that than you are that you said it to Mr. Clemons?
[Objection by district attorney with no ruling]
Q: Did you then proceed to appear before the Court with Mr. Zabaleta, as his attorney, and enter into a plea before the Court?
A: Yes, sir. And, Mr. LaVern, with respect to the question you previously asked me, I have a vague recollection of—
[[Image here]]
A: That the recommendation would be forthcoming at the sentencing. That is what has stuck in my mind ever since this thing has come up, and that’s what, in all honesty, I remember. And I did, in fact, convey to Mr. Zabaleta at the time of the plea, and prior to — and on the day of sentencing, prior to coming into this courtroom, that that would be the sentence recommendation, and that is what was negotiated with the State.
Q: And, Mr. Ware, do you — do you recall at some point in time, then, perhaps after the sentencing proceedings, or at some point in time after you had the negotiating — protracted negotiations in the back, in the holding area, do you recall any time when you actually told Mr. Clemons that you thought — and then told your client there was going to be a recommendation.
A: Mr. LaVern, when we came into court for the sentencing, I met with Mr. Clemons immediately prior to the sentencing, and 17I asked Mr. Clemons was he going to make the recommendation of 15 years. Mr. Clemons responded, as best I can recall, no, I’m not. And I mentioned, I said, I thought you were going to make the recommendation. And Mr. Clemons said — He didn’t really respond after that, and he says, well, I don’t know if he’s going to get more than 15 years anyway.
On cross-examination, Mr. Ware was questioned by the district attorney about the fact that Mr. Ware told the court at the guilty plea hearing there would be no joint recommendation. Mr. Ware stated that at that time he believed a deal would be coming forth at the sentencing. However, Mr. Ware did not inform the court of such a recommendation either at the plea or at sentencing. In fact, Mr. Ware informed the court a second time at the guilty plea hearing that there was no recommendation. When asked if he misrepresented information to his client, Mr. Ware replied:
A: That’s why I’m up here. It’s not fun being up here in these kind of proceedings. I obviously misrepresented something to him, and I think I’m responsible enough to get up here and tell it to the Court. This man’s freedom is on — is on the line, not mine. I owe it to him to come in here and say, I made a mistake, obviously made a mistake in telling you certain things that were not said or were not agreed upon. Yes, sir, I have no problem coming up here and telling you and the Court that it appears to be that I did misrepresent something to this man that he relied on that caused him to plead guilty and subsequently be sentenced to 25 years in prison.
*1225 [[Image here]]
Q: And so now it’s your testimony that there was no joint recommendation?
A: I’m telling, you, Mr. Clemons, that I recall that we did have an agreement, and that I told you we’ll accept the plea. That’s what I recall. Now, I could be wrong, and I’m willing to admit that maybe I am wrong, notwithstanding whether I’m right or wrong, I’m telling you, I told him that and he relied on it. Q: I understand you told him that, Mr. Ware. But Mr. Ware, if we had a joint recommendation and you told that to that man, there was no misrepresentation. But if we did not have that agreement and you told it to him, there was a misrepresentation. |8So I’m trying to clarify whether you’re saying we had the deal or we didn’t have a deal, because it appears you’re saying both.
A: Mr. Clemons, I don’t have anything recorded in my notes or on my transcripts, but in my mind I recall us, you and I, making that agreement, having that deal, and then I’m expecting that to come forth at the sentencing. Maybe I should have said something at the sentencing. And I do recall confronting you at — before the sentencing with 15 years. We talked in terms of 15 years. That is not doubt— there’s no doubt in my mind, I talked to you about a 15-year recommendation on the day of sentencing. It became apparent to me that something was amiss, either I was mistaken — I even thought that maybe Todd’s reneging on the deal, and I’ve thought about it more and more, and I can say that I believe that, Mr. Clemons. I’m not saying I believe you reneged on the deal. I’m say ... — I’m telling you that I’m not sure exactly what happened or how it happened, but — and I — there may not have been an agreement. It’s my understanding and it is my testimony I thought there was an agreement. I would not go and tell this man something that I didn’t think to be true. I thought you and I had a deal and I went and told him that. That’s what I’m saying.
After hearing the above testimony, the trial judge denied defendant’s motions. The pertinent part of the trial judge’s ruling is set forth below:
And I think that under the circumstances of this case, with Mr. Zabaleta’s history, and being no stranger to the criminal justice system, I find that under this record, when I look at the fact that there was no protest at the time of the taking of the plea, and that it had been stated there would be no recommendation. That was asked twice. Nothing was said by Mr. Zabaleta or by his attorney, and I believe at that time Mr. Ware didn’t think that there was a recommendation. And what I — what I really think and what I’m acting on here, it is more likely than not what has occurred here is that Mr. Zabaleta has gotten what he feels is an unexpected or a bad result, or a higher sentence than he’d like to have, and I think that there was— there was no doubt was discussion by Mr. Ware with Mr. Clemons about a plea ... And I think those things were discussed, and I really believe that it’s more likely here that Mr. Zabaleta has just had some late arriving memory of things, that he may believe it himself. And I really think he may have urged this on Mr. Ware so much — Mr. Ware’s known to me and everybody as being a very conscientious and able attorney and very quick to take responsibility, or that is — or really care about his clients, and I think it’s more likely what’s happened, Mr. Zabaleta’s got Mr. Ware persuaded of what took place ... But I just cannot find that on this record, because if I did so, it would just destroy the integrity of a record....
|9In State v. Jones, 546 So.2d 1343 (La.App. 3 Cir.1989), this court explained: The trial court has wide discretion in permitting a guilty plea to be withdrawn but this discretion may not be exercised arbitrarily. (Citation omitted). After sentence has been imposed, a guilty plea may be withdrawn only if it is shown that the plea is constitutionally infirm. (Citation omitted). Id. at 1346.
In this case, defendant moved to withdraw his guilty plea after his sentence was imposed. Thus, defendant must show his guilty plea was constitutionally infirm in order for it *1226 to be withdrawn. The court in Jones defined an invalid guilty plea as one in which “the defendant is induced to enter a plea by a plea agreement or by what the defendant reasonably believes is a plea agreement, and the terms of the bargain are not satisfied.” Id.
In another ease, State v. Malmay, 548 So.2d 71, 72-73 (La.App. 3 Cir.1989), this court again explained what constitutes a constitutionally deficient plea:
A guilty plea is constitutionally deficient where the state does not fulfill an express or implied part of the plea bargain which precipitated the defendant’s decision to so plead. (Citations omitted). Misunderstandings regarding sentence which are not induced by representations of the prosecutor or trial judge do not invalidate a guilty plea.
The facts of Malmay are similar to those in the present case. The defendant in Malmay urged only that his plea of guilty was involuntary because of an erroneous assumption shared by him and his counsel that suspension of sentence was available.
Although it is not clear in this case whether defendant’s counsel admits he made an unintentional misrepresentation to defendant or whether defendant’s counsel accuses the district attorney of reneging on the plea bargain, defendant did not prove a plea bargain actually existed. None of defendant’s witnesses stated for certain that the district attorney agreed to recommend a sentence of fifteen (15) years lipin return for defendant’s plea of guilty. Although Dr. Stebbins testified that Mr. Ware told bim, and Dr. Steb-bins then told defendant, there would be a joint recommendation of fifteen (15) years, Dr. Stebbins also testified that he never heard the district attorney tell such to Mr. Ware. Although Mr. Ware testified that he told defendant there would be a joint recommendation, his testimony is vague as to whether or not he and the district attorney actually agreed upon such a recommendation. Furthermore, defendant’s attorney stated twice at the guilty plea hearing that no recommendation would be made. If anything, the defendant and his attorney in the case sub judice were under the erroneous assumption that a joint sentencing recommendation would be made. Thus, this case is analogous to Malmay.
Although the defense attorney in Mal-may failed to move for a withdrawal of defendant’s plea, the court considered the sufficiency of defendant’s plea colloquy in its error patent review. For the following reasons, the Malmay court found defendant entered his plea knowingly and voluntarily:
In the instant case, the terms of the plea agreement were explained to defendant and his counsel. At the hearing when defendant’s guilty plea was accepted, the trial judge carefully listed constitutional rights waived by the guilty plea and clearly articulated the range of sentences. Appellant indicated an understanding. Contrary to appellant’s assertions, the transcript does not demonstrate an expectation of a suspended sentence. After the trial judge indicated an intent to impose the statutory minimum of ten years, defense counsel argued for an illegally lenient sentence by seeking suspension of the whole or part of the sentence. Most importantly, there is nothing in the record to indicate that either the prosecutor or the court led appellant to believe that he could receive a suspended sentence.
Id. at 73. Likewise, in the instant case, the trial judge listed the constitutional rights waived by defendant’s plea and clearly articulated the range of sentences. The only indication in the guilty plea transcript that defendant may have believed there would be a recommendation of fifteen (15) years is defendant’s response to the following I nquestion by the trial court: “Has anybody promised you anything or to give you anything for pleading guilty?” Defendant responded, “I’ve been told 15 years.” The trial court then stated:
Q: All right. I did tell him that, that that’s not a benefit. Has anybody told you they’re going to do anything to help you, or is anybody going to pay any money, or is anybody doing anything — promising to give you something—
A: No, sir.
The transcript does not indicate that the defendant mentioned at any other time an *1227 expectation to receive fifteen (15) years. Furthermore, there is nothing in the record to indicate that either the prosecutor or the court led appellant to believe that a joint sentencing recommendation would be made. As stated earlier, the trial court asked if a recommendation was going to be made, and both the prosecutor and defense attorney stated one would not be made. Thus, according to Malmay, defendant’s guilty plea was not constitutionally infirm.
For the foregoing reasons, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2

By this assignment, defendant argues the sentence imposed was cruel, unusual and excessive. Defendant did not raise the exees-siveness of his sentence in his motion to reconsider sentence or to withdraw guilty plea which was filed on February 23, 1995. However, after the trial court amended defendant’s sentence on January 26, 1995, the same day as the original sentencing, to include a fine of $250,000.00, or in default thereof one additional year in prison, the defendant raised the following objection:
And, Your Honor, for the record I would object to the Court’s imposing the minimum fine of $250,000 on Mr. Zabaleta. I would like the record to also reflect that the Public Defender’s Office was appointed to represent Mr. Zabaleta on August 18, Ii2l993, because of his indigency, and that he has remained in continuous custody since that date, and his financial status has not changed since that date. If it has changed at all, it has worsened. I would like to make that part of the record. I will object on the grounds of excessiveness under the Louisiana Constitution and under the 8th Amendment of the United States Constitution, which forbids cruel and unusual punishment.
The trial judge noted the defendant’s objection and reserved the defendant’s right “to raise the issue of his indigency at such time as it approaches that he is actually obliged to pay, or have his liberty further restricted.” Defendant does not argue in his brief that his sentence was excessive because a fine was imposed on him as an indigent. He argues:
Even though the sentence imposed in this case was not an upward departure from the penalty range recommended by the Louisiana Sentencing Guidelines, Defendant submits it is nonetheless excessive considering the drugs were not his, he did not assist in procuring the drugs, and his involvement was slight by only helping to drive the automobile with the hope of receiving some undetermined benefit.
As noted earlier, in his brief, defendant raises a general excessiveness claim. The Louisiana Supreme Court has held that when the trial judge considers the Guidelines, adequately states for the record the considerations taken into account and the factual basis for the sentence imposed, and the sentence is within the statutory sentencing range for the crime of which the defendant has been convicted, “an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines.” State v. Smith, 93-0402 (La.7/5/94), 639 So.2d 237,240 on rehearing.
In the instant case, the trial judge stated for the record that he considered the Guidelines. The trial judge stated that the Guidelines recommended 270 to 300 months (22½ years — 25 years), and he sentenced defendant to twenty-five (25) years |i3at hard labor to run consecutive to his previous Texas sentence. The trial judge also adequately stated the considerations he took into account and the factual basis for the sentence imposed. As reasons for the sentence imposed, the trial judge noted the seriousness of defendant’s offense and defendant’s prior criminal history. According to the Pre-Sen-tence Investigation Report, the defendant was arrested in Texas in 1988 for possession of marijuana, disposition unknown. Defendant was also convicted of engaging in organized crime in 1991, also in Texas. The trial judge further noted the lenient sentence defendant received for his 1991 conviction. Finally, the trial judge noted the fact that defendant has been active in drugs for quite some time even though he is young. The trial judge adequately stated for the record *1228 his considerations and the factual basis for the sentence.
The sentence imposed was within the statutory sentencing range for the crime to which defendant pled guilty. The 1993 version of La.R.S. 40:967(F)(l)(c) provides for a penalty of fifteen (15) to thirty (30) years imprisonment and a fine of not less than $250,000.00 nor more than $600,000.00. Subsection G of 40:967 also provides for defendant’s minimum sentence, fifteen (15) years, to be served without benefit of suspension, deferment, or withholding and without benefit of probation or parole. The trial judge in the case sub judice sentenced defendant to twenty-five (25) years at hard labor, with the first fifteen (15) being without benefit of probation, parole or suspension of sentence. Although refusing to impose the fine in defendant’s original sentencing, the trial judge returned on the same day and ordered defendant to pay a fine of $250,000.00, in default thereof, to serve one additional year in jail. The sentence imposed by the trial judge was within the statutory range of sentences provided for in the 1993 version of La.R.S. 40:967(F). Thus, this court is limited to reviewing defendant’s sentence for excessiveness only.
| i4The jurisprudence clearly indicates that to constitute an excessive sentence this court must find the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App.3 Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits -will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210 (La.1982).
The trial judge did not abuse his discretion in imposing defendant’s sentence. Defendant received five (5) years less than the maximum sentence and was ordered to pay the minimum fine. Furthermore, defendant had one previous arrest and "one previous conviction. We further note the sentence provided for in La.R.S. 40:967(F)(l)(c) was increased in 1994 to a minimum of thirty (30) years and a maximum of sixty (60) years.
For the foregoing reasons, this assignment lacks merit.

CONCLUSION

Defendant’s conviction and sentence are affirmed.
AFFIRMED.