764 So.2d 1164 (2000)
STATE of Louisiana, Appellee,
v.
Michael Wayne WILLIAMS, Appellant.
No. 33,581-KA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 2000.
*1165 Amy C. Ellender, Louisiana Appellate Project, Counsel for Appellant.
Richard Ieyoub, Attorney General, Jerry Jones, District Attorney, Counsel for Appellee.
Before BROWN, WILLIAMS and PEATROSS, JJ.
BROWN, J.
A jury found defendant, Michael Wayne Williams, guilty of aggravated battery. He received the maximum sentence of ten years at hard labor. On appeal, defendant urges that the evidence was insufficient, his attorney ineffective and the sentence excessive. Finding no error, we affirm.

Discussion

Sufficiency of the Evidence
At trial, only the victim, Alvin McClain, testified to the actual incident. Medical records and the investigating officer's observations substantiated the genuineness and extent of McClain's injuries. Relying on the belief that the state's evidence was insufficient to prove beyond a reasonable doubt that defendant acted without justification, the defense offered no testimony or evidence. See State v. Salter, 31,633 (La. App.2d Cir.02/24/99), 733 So.2d 58.
McClain's testimony is summarized as follows:
McClain lived in a high crime area; his neighbors were elderly and had asked him to watch their property. On October 27, 1997, McClain saw defendant, whom he knew did not live in the neighborhood, walking across a neighbor's yard carrying an aquarium and buckets.[1] McClain told defendant to "put back what he had" and to "get off the street;" defendant mumbled something and dropped what was in his hands. McClain then left to run an errand. Returning home McClain saw defendant at the corner of South Second and Pecan Streets. Defendant acted as if he was going to step in front of McClain's jeep. McClain pulled into a parking lot, got out of his jeep and asked defendant what was his problem. Defendant said that he had permission to get the items from McClain's neighbor. Suddenly, defendant picked up a brick. McClain started back to his jeep; as McClain tried to get into his vehicle, defendant threatened to break his windshield. McClain got out of his jeep and said, "If you have to hit anything, hit me." Defendant threw the brick, striking McClain with a glancing blow; a fist fight ensued. Several young people, none of whom were known to McClain, gathered around. McClain wrestled defendant to the ground and told him that the fight was over; neither McClain nor defendant was injured at that point. As McClain tried to leave, defendant stated that "it's not over yet," and someone pulled McClain's feet causing him to fall to the ground. While McClain was on the ground, defendant hit him with a brick, pounded his head against the concrete pavement and kicked him. Someone *1166 reached into McClain's back pocket and took his wallet. Defendant continued to kick McClain while the other person was going through McClain's wallet. This other person then threw the wallet down. McClain heard his jeep being started. Defendant did not stop hitting McClain until a siren became audible. At that time, the crowd scattered and McClain walked home. An ambulance transported McClain to a local hospital where he got stitches in his lip and forehead. McClain was in pain for days, restricted to home rest for three weeks and ultimately had to have surgery. McClain stated that he never had anything in his hands during the entire altercation.
Larry Rachal testified that he lived across the street from McClain. Rachal, who traveled and spent time at another residence on Lake Bruin, had asked McClain to watch Rachal's house during his absences. At the time of this incident, Rachal stated that he had not given anyone permission to take anything from his house. Rachal also noted that he had not left anything on the curb for trash pickup. He testified that he had an aquarium and some fish buckets in his back yard, but again, he had not given anyone permission to take those items from his house.
Nolan Justice, who lived two doors down from McClain, testified that they watched each other's houses whenever the other one was gone. Justice's home had been burglarized two or three times. Justice stated that he had told McClain that he should "run off" anyone at Justice's house while he was gone. Justice had never known McClain to get into any fights or arguments or any other kind of trouble.
William Douglas Tarver, a detective with the Monroe Police Department, investigated the incident. Det. Tarver interviewed McClain two days after the fight, while McClain was still in the hospital. McClain had stitches in his head, which was "busted" in several places. The back of McClain's head and his mouth were "busted" to the extent that he had trouble talking.
On that same date, Det. Tarver interviewed defendant at the police station. Defendant did not present any outward signs that he'd been involved in a fight. He had a plastic piece on his jaw from a previously broken bone. The plastic piece was broken. Detective Tarver informed defendant of his rights and obtained his consent to an interview. The resulting statement was admitted into evidence without objection. A tape recording of the interview was played for the jury.
During the interview, defendant said that he had permission to take the fish aquarium and some buckets. McClain, armed with a big knife, told defendant to get off the street. He left and called the police about the incident from a Fina Mart, then rode around with the police trying to find McClain. Defendant stated that the police told him to take the buckets. He took the buckets to his brother's van and then went out to buy some chicken. Det. Tarver testified that he was unable to verify that such a call was made to the police or that any officer met with defendant.
Defendant further stated in the interview that while he was at Church's Chicken, McClain drove up, threw defendant to the ground and beat on him for "five to ten minutes." Defendant stated that he knocked McClain down with one punch. McClain got up, defendant knocked him down again and started kicking McClain to get him to release defendant's leg. Defendant stated that he went to a house to call the police because he did not want to hurt McClain; however, he could not get anyone to answer the door. He then found a brick to scare McClain away, but he threw it to the ground. McClain ran up and grabbed defendant. At that time, defendant picked up the brick, then threw it down and knocked McClain out "again." Defendant kicked McClain. Someone then started McClain's jeep and drove away. McClain ran after the jeep. "They" did something to McClain down the street. *1167 Defendant did not know anything about McClain's wallet.
In an earlier, unrecorded interview, defendant gave a similar story but said that he had trouble remembering the details because he had "a pretty good bit to drink that night." He said his head hurt and he had to terminate the interview because he was going into a seizure.
Medical records detailing McClain's injuries were admitted without objection. The prosecution rested. As noted above, the defense rested without presenting any evidence or testimony.
The standard for review of the sufficiency of the evidence is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. This court's authority to review questions of fact in a criminal case is limited to such a due process evaluation and does not extend to credibility findings made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). A reviewing court does not act as a juror and cannot substitute its view for that of the jury. It is for the jury to decide to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
It was within the jury's province to believe McClain. As such, the evidence viewed in the light most favorable to the prosecution supports the jury's determination that defendant did not act in self-defense. Defendant initiated the physical altercation by throwing a brick at McClain. After McClain attempted to leave the scene, and after he told defendant that the fight was over, defendant persisted in prolonging the conflict. Thereafter, while McClain was on the ground, defendant kicked and struck McClain with a brick. Even if one believed that McClain had been the initial aggressor, the altercation ended when he told defendant that the fight was over and expressed his clear desire to withdraw. After that, there was no need for defendant to protect or defend himself. Once McClain said that the conflict was over, defendant clearly became the aggressor. He struck McClain with a brick, kicked him, and struck his head against the pavement.

Denial of Motion for New Trial
In a motion for new trial, defendant urges that his trial counsel was ineffective by failing to introduce "crucial" evidence of self-defense, by failing to call key witnesses who would corroborate that claim and for refusing to allow defendant to testify. Alternatively, defendant contends that the trial court also erred in denying the motion for new trial on the ground that the prosecution withheld evidence, i.e. a police report.
At an evidentiary hearing on the new trial motion, defendant testified that he never spoke with his court-appointed counsel about the trial of this case; however, the record reflects that defendant met with his attorney in December 1997, October 1998 and before trial. Defendant said he gave his lawyer a list of 12 or 13 witnesses and asked counsel to obtain medical records and a police report; his attorney said that he had called the witnesses but those people no longer worked "at the places and stuff like that." Defendant claimed that he went to Church's Chicken after the trial and the people there said that they'd been waiting for subpoenas. According to defendant, these witnesses theoretically would refute the claim that a brick was used during the altercation.
*1168 Defendant stated that he told his attorney that he wanted to testify. In response to questions from the court, defendant said that he never discussed with his trial counsel the probability that if defendant testified he would be examined about his prior convictions. A few moments later, however, defendant stated that he had talked to his attorney about the possibility of his being cross-examined on his record, but stated that he did not care.
The court noted that the trial testimony had been clear that a "piece of concrete or a brick" had been used by defendant. McClain testified that the brick first hit him in a glancing blow. McClain was cross-examined on this issue. The jury was entitled to reach a verdict based on that evidence. The court found the balance of the testimony "did not measure up" to entitle defendant to a new trial and denied the motion.
The police report not given to the defense concerned defendant's call to the police after the fight at Church's Chicken. It simply showed that defendant's and McClain's versions conflicted.
As a general rule, a claim of ineffective assistance of counsel should be raised in an application for post-conviction relief (PCR) in the trial court so that a full evidentiary hearing may be had under La. C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La. 1982); State v. Green, 27,652 (La.App.2d Cir.01/24/96), 666 So.2d 1302, writ denied, 97-0504 (La.10/31/97), 703 So.2d 14. A new trial motion is also a proper vehicle to raise such claims. In this case defendant filed a new trial motion and was afforded a full evidentiary hearing.
Defendant has not shown that his counsel's errors, if any, were so serious as to deprive him of a fair trial. Quite simply, defendant has not established actual prejudice, i.e. that, but for his attorney's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Pratt, 26,862 (La.App.2d Cir.04/05/95), 653 So.2d 174, writ denied, 95-1398 (La.11/03/95), 662 So.2d 9.

Excessive Sentence
Defendant concedes that the trial court adequately articulated its reasons for sentence, but urges that the court failed to give adequate weight to the circumstancessome degree of justification surrounding this battery. The trial court simply did not believe defendant's claim of self defense.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.04/02/97), 691 So.2d 345.
Defendant's criminal record showed numerous arrests for various offenses, including property damage, aggravated assault, DWI, aggravated battery (at least four separate occasions), possession of marijuana, forgery, felony theft reduced to middle grade, aggravated assault involving a knife, criminal damage to property, aggravated battery involving a knife, filing a false report, nonsupport and trespassing. Defendant's convictions were for middle grade theft and attempted simple burglary. Defendant claimed that McClain had a criminal record, but the parole office found that McClain in fact did not have a criminal history. The Monroe Police Department considered defendant to be "a real present threat to the community" due to his history of violence.
We find no abuse of discretion in the ten-year sentence imposed by the trial court. Defendant acted without justification and caused substantial injury. Defendant has numerous prior arrests for crimes against persons and property. In fact, while out on bond after his arrest for *1169 the instant offense, defendant was charged with simple burglary of an inhabited dwelling.
Defendant also urges that his sentence is excessive because the court did not allow the accrual of "good time." This claim has no merit. La. R.S. 15:571.3(C)(1)(q) provides that diminution of sentence shall not be allowed to an inmate in the custody of the Department of Public Safety and Corrections if he has been convicted of a crime of violence as defined in La.R.S. 14:2(13). Aggravated battery is specifically listed in R.S. 14:2(13) as a crime of violence. Therefore, the trial court had no discretion to grant diminution of sentence for good behavior.

Conclusion
For the reasons set forth above, defendant's conviction and sentence are AFFIRMED.[2]
NOTES
[1] McClain did not recall what the items were; however, in a statement to the investigating officer, defendant said that he was carrying an aquarium and buckets.
[2] The trial court informed defendant that the prescriptive period for post-conviction relief was three years. This was correct advice at the time of defendant's sentencing in April 1999. However, the statute has been amended to provide that the prescriptive period is now two years.

The trial court is hereby directed to send appropriate written notice of the amendment of the statute to defendant within 10 days of the rendition of this opinion and to file proof of defendant's receipt of such notice in the record of the proceedings. State v. Smith, 600 So.2d 745 (La.App.2d Cir.1992).