865 So.2d 248 (2004)
STATE of Louisiana, Appellee
v.
Jerry Barrioshena ELZIE, Appellant.
No. 37,920-KA.
Court of Appeal of Louisiana, Second Circuit.
January 28, 2004.
*249 Anita D. McKeithen, Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, Edwin L. Blewer, J. Thomas Butler, Assistant District Attorneys, for Appellee.
Before WILLIAMS, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
Defendant, Reverend Jerry B. Elzie, was charged with molestation of a juvenile on two grounds: by the use of force, menace and psychological intimidation and by the use of influence by virtue of a position of control and supervision over the juvenile, J.A.[1], in violation of La. R.S. *250 14:81.2(A)[2]. He was tried by a six-person jury and convicted as charged. Defendant was sentenced to serve 12 and a half years imprisonment at hard labor. He now appeals his conviction and sentence. For the reasons stated herein, we affirm.

FACTS
The victim, J.A., was born on October 10, 1980. Defendant is J.A.'s father and a reverend at a church in Shreveport, Louisiana. In the fall of 1995, when J.A. was 15 years old, she began using Defendant's address in order to attend Woodlawn High School.[3] During this time, Defendant and J.A. spent time alone at various locations, including Defendant's home. Ultimately, Defendant had sex with J.A. at least three times during the fall of 1995, twice at his office in his residence and once at his church. Defendant ordered J.A. to have sex with him each time. In two of the sexual acts between Defendant and J.A., Defendant rubbed J.A. with oil and had candles burning in the room. J.A. questioned Defendant as to why he ordered her to have sex with him and told him that she did not want to have sex with him, crying throughout one of the acts. Defendant explained to J.A. that others had "done it" and she also had to "do it" to get the blessings of God. J.A. did not tell anyone what happened to her because Defendant told her that nobody would believe her they would believe him.
After a few weeks, having become upset with J.A.'s reluctance to continue having sex with him, Defendant took J.A. by a store he owned and showed her a bed with candles surrounding the bed. Defendant told her, "This is what you missed out on. This was all for you." Defendant then took J.A. back to her home; and, while she was being dropped off, J.A. exclaimed to her mother, in the presence of Defendant, that she did not want to have sex with Defendant anymore. In response to J.A.'s accusation, Defendant told the victim, "Do you see what you have done. Do you know this will take me to jail?" J.A. never returned to Defendant's household. Shortly after this encounter, the authorities were notified.
In November 1995, Lieutenant Mickey Lowe of the juvenile and sex crimes unit with the Shreveport Police Department received a call from a counselor at Woodlawn High School regarding a 15-year-old girl, J.A., who complained that her father had ordered her to have sexual intercourse with him on at least two different occasions. J.A. said that one incident took place at Defendant's office. The other took place in a room in Defendant's church. Lieutenant Lowe began the investigation by interviewing J.A. He also arranged for J.A. to have a medical examination with Dr. Ann Springer at LSU Medical Center. Dr. Springer, an expert *251 in pediatric medicine and evaluation of child sexual abuse, examined J.A. on November 30, 1995. J.A.'s exam was "normal"it neither proved nor disproved sexual abuse.
In an interview conducted by Detective Carolyn Eaves Deal, Defendant denied any intimate sexual relationship with J.A.'s mother, denied that J.A. was his daughter and denied the allegations of sexual abuse. Until J.A.'s accusation of what Defendant had done to her, Defendant had never denied to J.A. that she was his daughter. Specifically, Defendant related that J.A.'s mother caused problems for him when she was pregnant by publicly claiming in church that he was "her man," and contacting his wife about her claim. Defendant claimed that J.A.'s mother then asked Defendant and his wife to be J.A.'s godparents, to which they agreed. Further, Defendant related to Detective Deal that J.A.'s mother approached him about letting J.A. use his address so that she could attend Woodlawn High School. Defendant explained that J.A.'s accusations of sexual abuse were because she was angry at him for having spanked her as punishment for bad grades. Moreover, Defendant told Detective Deal that his wife and daughters could confirm that he was never alone with J.A. Due to the lack of evidence to substantiate J.A.'s claims or to determine that Defendant was lying about his relation to J.A., the case was closed in December 1995. Detective Deal did not have the capability to take DNA samples in 1995.
The case was reopened in early 1998 when the Caddo Parish District Attorney's Office's newly formed screening section reviewed the case. A search warrant was obtained to collect epithelial cells from the cheek lining of Defendant and several other persons, in order to establish paternity. The collection was conducted by Detective Deal in accordance with instructions given by Connie Brown ("Brown") of the North Louisiana Crime Lab regarding the proper collection procedures. Detective Deal wore the same gloves throughout the collection process. Epithelial cell samples were also taken from J.A. and her mother at the police station.
After testing the samples, it was determined that J.A. was indeed the daughter of Defendant. Further, it was also determined that Defendant was the father of other children with two other girls. The police discovered that in 1983, Defendant fathered a child with one of the girls, who is his adoptive daughter, while she was under the age of consent and the other girl told police that she had sex with Defendant numerous times before she came into the age of consent and later gave birth to two of Defendant's children.
Based on the discovery of this evidence that Defendant had lied to the police and that he had shown a pattern of behavior of having sex with underage girls, one being his adoptive daughter, Defendant was charged with molestation of a juvenile, his daughter, J.A. At trial, J.A. testified against Defendant, describing Defendant's actions. On cross-examination, J.A. testified that she made some bad grades in September at Woodlawn High School. It was also brought out that Defendant had spanked J.A. because of those grades. J.A. explained that her bad grades were in response to what her father was doing to her. She steadfastly denied concocting the accusations against her father because she was angry about the spanking.
The State presented not only the testimony of J.A., but also that of the investigating officers and Dr. Springer. Dr. Springer testified that, during her exam of J.A., J.A. told Dr. Springer that her biological father had sex with her two times. As previously stated, J.A.'s exam was "normal"it neither proved nor disproved *252 sexual abuse; but Dr. Springer explained at trial that, in 80 percent of the cases in which penetration is known to have occurred with a female victim, the physical exam will still produce normal results. Dr. Springer further explained that it is normal for an abused child to "act out," and it is particularly normal for an abused child to have difficulty in school. According to Dr. Springer, the latter is a "red flag." In her conclusion, Dr. Springer opined that this case was typical of the findings seen when a child is sexually molested and penetrated.
Connie Larkins also testified for the State. Ms. Larkins is the adoptive daughter of Defendant. When she was age 14 or 15, she gave birth to a son. It was later determined that Defendant was the father of Ms. Larkins' child. Tracy Lidette Smith also testified for the State. She was a childhood friend of Ms. Larkins; and, when she was younger, she would go to Defendant's house to play and she attended Defendant's church. Ms. Smith testified that she began having sex with Defendant when she was a 14-year-old virgin. Defendant had sex with Ms. Smith about three times a week while she was underage. He fathered her two children.
Brown, an expert in the field of DNA analysis, testified that there was no contamination of any of the DNA samples taken by Detective Deal in this case. According to the tests of the samples performed by Brown, there is a 99.99 percent probability that Defendant is J.A.'s father, the father of Ms. Smith's two children and the father of Ms. Larkins' child.
After the conclusion of the trial, Defendant was convicted as charged of molestation of a juvenile on two grounds: by use of force, menace and psychological intimidation and by the use of influence by virtue of a position of control and supervision over J.A. After the conviction, Defendant filed a motion for post-verdict judgment of acquittal and/or a motion for a new trial. His motion asserted that the evidence did not reasonably support the guilty verdict. Defendant also argued that a new trial should be granted because the verdict was contrary to law and evidence and the ends of justice would not be served because his defense trial counsel was ineffective. After a hearing and arguments, the motions were denied by the trial court.
On December 30, 2002, a sentencing proceeding was held. Defendant was allowed to address the trial judge. Before sentencing Defendant, the trial judge read the facts of the crime into the record. In particular, the trial judge noted that two sexual acts with J.A. were performed as a religious ritual wherein she was rubbed with an oil and laid near a cross and lighted candle before intercourse. The trial judge also noted that Defendant had a history of taking advantage of underage girls by having sex with them, using his position as a minister to entice these young girls to satisfy his sexual desires. The trial judge found it particularly reprehensible that Defendant's conduct in this case involved his own natural daughter.
Defendant was then sentenced to serve 12 and a half years imprisonment at hard labor, with credit for time served. Subsequently, Defendant timely filed a motion to reconsider sentence, which was denied. Defendant now appeals, raising the following assignments of error (verbatim):
1. The trial court erred by convicting the defendant without sufficient evidence to do so;
2. The trial court erred by denying defendant's motion for a new trial; and,
3. The trial court erred by imposing an excessive sentence.

*253 DISCUSSION

Sufficiency of the Evidence
Defendant argues that the evidence presented at trial was not sufficient to convict him of the crime charged. He asserts that J.A.'s physical examination did not support her allegation of sexual activity. He further contends that J.A.'s trial testimony was inconsistent with her statement to the examining physician, Dr. Springer, that she had sex with Defendant two times. Defendant further argues that the DNA evidence was unreliable because Detective Deal did not change gloves between taking swabs from at least 18 individuals; and, thus, the evidence could have been contaminated. He asserts that no rational trier of fact could have found him guilty beyond a reasonable doubt. We disagree.
The question of sufficiency of the evidence is properly raised by a motion for post-verdict judgment of acquittal. La. C.Cr.P. art. 821; State v. Gay, 29,434 (La. App.2d Cir.6/18/97), 697 So.2d 642. When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La. App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writs denied, 00-3070 (La.10/26/01), 799 So.2d 1150, 01-2087 (La.4/19/02), 813 So.2d 424. This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
The testimony of the victim alone is sufficient to convict a defendant. State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 00-2726 (La.10/12/01), 799 So.2d 490. This is equally applicable to the testimony of sexual assault victims. State v. Rives, 407 So.2d 1195 (La.1981); State v. Thomas, 30,490 (La.App.2d Cir.4/8/98), 711 So.2d 808, writ denied, 99-0331 (La.7/2/99), 747 So.2d 8; State v. Free, 26,267 (La.App.2d Cir.9/21/94), 643 So.2d 767, writ denied, 94-2846 (La.3/10/95), 650 So.2d 1175; State v. Standifer, 513 So.2d 481 (La.App. 2d Cir.1987). Indeed, such testimony alone is sufficient even where the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant. State v. Ponsell, supra; State v. Watson, 32,203 (La.App.2d Cir.8/18/99), 743 So.2d 239, writ denied, 99-3014 (La.3/31/00), 759 So.2d 69; State v. Turner, 591 So.2d 391 (La.App. 2d Cir. 1991), writ denied, 597 So.2d 1027 (La. 1992).
The essential elements of the crime of molestation of a juvenile, each of which *254 the prosecution must prove beyond a reasonable doubt, are (1) the accused was over the age of seventeen, (2) the accused committed a lewd or lascivious act upon the person or in the presence of a child under the age of seventeen, (3) the accused was more than two years older than the victim, (4) the accused had the specific intent to arouse or gratify either the child's sexual desires or his own sexual desires and (5) the accused committed the lewd or lascivious act by use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm or by the use of influence by virtue of a position of control or supervision over the juvenile. State v. LeBlanc, 506 So.2d 1197 (La.1987); State v. Breaux, 02-382 (La. App. 5th Cir.10/16/02), 830 So.2d 1003.
After viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of Defendant's crime proven beyond a reasonable doubt. The State proved the ages of both J.A. and Defendant at the time of the sexual encounters. Through J.A.'s testimony, the State proved that Defendant committed the act upon J.A. with the specific intent to satisfy his own sexual desires while he used intimidation and control to force her to have sex with him. This testimony alone supports Defendant's conviction and was sufficient to persuade the jury to convict Defendant. Contrary to Defendant's assertions, it is not necessary for the State to introduce any medical, scientific or physical evidence to prove the commission of the offense by him. The jury's decision to accept the testimony of J.A. in whole or in part will be accorded great deference and we will not disturb it on appeal. We conclude that there was sufficient evidence to find Defendant guilty; and, consequently, Defendant's first assignment of error is without merit.

Ineffective Assistance of Counsel
Defendant argues that the trial court erred in denying his motion for a new trial because he had ineffective assistance of counsel. He contends that no defense was presented and his defense counsel failed to rebut several of the claims made against him. Further, Defendant asserts that, contrary to his trial counsel's statements during oral arguments, no evidence was presented regarding Defendant's loving household. Defendant also argues that his trial counsel erred in failing to call J.A.'s mother as a witness and in failing to call witnesses to testify regarding J.A.'s mother's change in demeanor and threats against Defendant after their love affair ended, despite his trial counsel's statement in oral arguments that such evidence would be presented. He further argues that his trial counsel incorrectly told the jury that Dr. Springer's opinion was that the victim's examination was normal. Finally, Defendant contends that his trial counsel erred in failing to call any witnesses to testify that the DNA samples could have been contaminated because Detective Deal failed to change gloves between the individuals from whom she received a DNA sample. Defendant concludes that these facts clearly show that he suffered some injustice and his motion for new trial should have been granted. We do not agree.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court than by appeal. This is because post-conviction relief creates the opportunity for a full evidentiary hearing under La.C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Williams, 33,581 (La.App.2d Cir.6/21/00), 764 So.2d 1164. A motion for new trial, however, is also an accepted vehicle to *255 raise such a claim. Id. When the record is sufficient, we may resolve the issue of ineffective assistance of counsel on direct appeal in the interest of judicial economy. See State v. Ratcliff, 416 So.2d 528 (La. 1982); State v. Willars, 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673; State v. Smith, 25,841 (La.App.2d Cir.2/23/94), 632 So.2d 887.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). The defendant bears the burden of proving that certain acts by his counsel were deficient and that this deficiency led to an unreliable outcome. Id.
A claim of ineffectiveness of counsel is analyzed under the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, to establish that his attorney was ineffective, a defendant must show that his counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra; State v. Roland, 36,786 (La.App.2d Cir.6/5/03), 850 So.2d 738; State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991). The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment. Roland, supra; Moore, supra.
Second, a defendant must show that his counsel's deficient performance prejudiced his defense. This element requires a showing that the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, supra. A defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; Roland, supra; State v. Pratt, 26,862 (La. App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9.
Based partly on his claim of ineffective assistance of counsel, Defendant in this case filed a motion for new trial and was afforded a hearing. The record contains sufficient evidence to address Defendant's allegations here; however, we find that Defendant's claim of ineffective assistance of counsel is unsubstantiated.
Defendant was represented by two attorneys at trial. Contrary to Defendant's allegations, his trial team did present a defense, which was that the State failed to prove its case. The record shows that Defendant's trial team questioned all witnesses and diligently pursued its theory throughout the case, alleging that J.A. made up the story as revenge against Defendant. Moreover, failing to call certain witnesses does not itself establish ineffective assistance of counsel. See Willars, supra. Defendant cannot show that his defense counsel was deficient or that, even if his defense counsel was deficient, but for his defense counsel's errors, there is a reasonable probability the outcome of the trial would have been different.
*256 Defendant's allegations of attorney error are vague and touch merely upon defense counsel's strategy and what hypothetically defense counsel should have done at trial. We note that Defendant does not even specify which of his two defense attorneys was allegedly ineffective or whether it is argued that both attorneys were ineffective. The failure to present defense witnesses was a tactical and strategic decision, not an example of ineffective assistance of counsel, and we will give great deference to trial counsel in these decisions. At the hearing on the motion for new trial, Defendant argued in broad general terms about his ineffective assistance of counsel, without providing any evidence of this claim. Defendant has failed to show that he was prejudiced by defense counsel's trial strategy or that he was deprived of a fair trial. The record does not support Defendant's claims of ineffective assistance of counsel; and, thus, this assignment of error is without merit.

Defendant's Sentence
Defendant notes that the maximum sentence for the instant offense is 15 years, with or without hard labor. He argues that his 12 and a half year hard labor sentence is excessive. Although the trial court considered his previous criminal history, which included two prior felonies, Defendant contends that the court failed to recognize that he has had no criminal history since 1976. Defendant asserts that one of his felonies is over 37 years old and the other is more than 26 years old; and, consequently, his sentence is excessive. We do not agree.
La. R.S. 14:81.2 C provides:
Whoever commits the crime of molestation of a juvenile when the offender has control or supervision over the juvenile shall be fined not more than ten thousand dollars, or imprisoned, with or without hard labor, for not less than one nor more than fifteen years, or both, provided that the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with Code of Criminal Procedure Article 893.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. The record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979.
*257 Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); Bradford, supra.
In the case sub judice, the record contains a complete and accurate articulation of the factual basis for Defendant's sentence, setting forth the criteria the court considered in sentencing Defendant in compliance with La.C.Cr.P. art. 894.1. The record adequately indicates that the trial judge considered the circumstances of this case and of Defendant, reciting the factors he considered before imposing sentence, including Defendant's lengthy personal statement, his age, the details of his criminal history[4] and the content of the multiple letters sent to the court on his behalf. A pre-sentence investigative report was prepared and filed into the record. Defendant has exhibited a history of a predilection for sex with underage girlsa nature which could easily be described as predatory. In summary, the trial judge concluded that Defendant was a third-felony offender and used his position as a minister to seduce underage girls under the pretense that it was sanctioned by his religion. The fact that these types of relationships produced children was also considered.
Defendant's 12 and a half year hard labor sentence is neither grossly out of proportion to the seriousness of the offense, nor is it a purposeless and needless infliction of pain and suffering. He did not receive the maximum sentence of imprisonment for this heinous, loathsome crime and no fine was imposed. When the crime and punishment are viewed in light of the harm done to society, and particularly to J.A., Defendant's sentence does not shock the sense of justice and it is not constitutionally excessive under the facts and circumstances of this case. Defendant's final assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the conviction and sentence of Defendant, Reverend Jerry B. Elzie, are affirmed.
AFFIRMED.
NOTES
[1] The victim's initials are used because of confidentiality requirements applicable to the instant case under La. R.S. 46:1844(W).
[2] La. R.S. 14:81.2(A) defines molestation as follows:

Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
[3] Before this time, J.A. was not brought up in Defendant's home. Defendant's house was located within Woodlawn's school district. J.A. also used Defendant's address to ride the bus to school. J.A. lived with her mother, but used her father's address so that she could attend Woodlawn. J.A.'s mother lived in the Captain Shreve High School school district.
[4] In 1965, while in military service, Defendant was convicted by court martial of illegal carrying of a weapon and received a three-month hard labor sentence. In 1965, he was also convicted by court martial of house breaking or burglary in Fort Sam Houston and sentenced to serve one year at hard labor. In 1976, the defendant was convicted of a postal violation and sentenced to serve one year imprisonment at hard labor, two years execution, all but six months suspended, and given five years probation.