975 So.2d 771 (2008)
STATE of Louisiana, Appellee
v.
James Fredrick LINN, Appellant.
No. 43,006-KA.
Court of Appeal of Louisiana, Second Circuit.
February 13, 2008.
*772 Carey J. Ellis, III, Louisiana Appellate Project, for Appellant.
James Fredrick Linn, Pro Se.
Paul J. Carmouche, District Attorney, Tommy J. Johnson, John Ford McWilliams, Jason T. Brown, Assistant District Attorneys, for Appellee.
Before STEWART, GASKINS, and LOLLEY, JJ.
LOLLEY, J.
The defendant, James Fredrick Linn, was found guilty after trial by jury of the charged offense of creation and operation of a clandestine laboratory, a violation of La. R.S. 40:983(A)(1). He was sentenced to eight years at hard labor and now appeals. For the following reasons, we affirm Linn's conviction, but vacate his sentence and remand to the trial court for resentencing.

FACTS
On February 18, 2006, Linn was pulled over for a traffic infraction by Off. Sean Channell of the Vivian Police Department. Through the window of Linn's vehicle, Off. Channell noticed several items on the seat which he immediately recognized as being used in the manufacture of methamphetamine. Officer Channell placed Linn under arrest for the offense of creation and operation of a clandestine laboratory, a violation of La. R.S. 40:983(A)(1), for which he was later charged by bill of information.
After a jury trial, Linn was convicted by a vote of 11-1 of the charged offense. Subsequently, a fourth felony habitual offender bill of information was filed; however, Linn was not found to be a fourth felony offender. On January 31, 2007, he was sentenced by the trial court to eight years at hard labor to be served concurrently with any other sentence, with credit for time served. The trial court also ordered *773 Linn to reimburse "any agency" for the costs of "any clean-up costs," adding that in default of that Linn was sentenced to an additional 18 months in the parish jail and that restitution was to be performed "within the first year after his release from jail." The trial court gave no reasons for the sentence imposed. Linn's counsel filed a motion to reconsider sentence, and Linn filed a pro se motion to reconsider sentence. In a written opinion rendered in May 2007, the trial court stated that it would consider the filings as a motion to amend, but the trial court denied the motions on the basis that it was without authority to amend or modify the sentence after the sentence had commenced. This appeal by Linn ensued.

DISCUSSION
On appeal, Linn's appeal counsel raises two assignments of error related only to the sentence in addition to several pro se assignments of error brought by Linn.

Sufficiency of the Evidence
In his first pro se assignment of error, Linn argues that the evidence was insufficient to convict him of the crime charged, and the jury's verdict was contrary to the law and evidence. He specifically argues that the testimony of Sgt. Carl Townley, a supervisor at the Caddo Shreveport Narcotics Unit who was qualified at the trial as an expert on narcotics, was confusing, misleading and prejudicial. Linn also maintains that Off. Channell's testimony was inconsistent and uncorroborated. We disagree.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Murray, 36,137 (La.App. 2d Cir.08/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.09/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.02/22/06), 922 So.2d 517. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, XXXX-XXXX (La.10/16/95), 661 So.2d 442; State v. Steward, 42,643 (La.App. 2d Cir. 11/14/07), 969 So.2d 804. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.08/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2d Cir.09/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.03/28/03), 840 So.2d 566, 2002-2997 (La.06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Burd, 40,480 (La.App. 2d Cir.01/27/06), 921 So.2d 219, writ denied, XXXX-XXXX (La.11/09/06), 941 So.2d 35.
Louisiana R.S. 40:983(A)(1) states that:
A. Creation or operation of a clandestine laboratory for the unlawful manufacture *774 of a controlled dangerous substance is any of the following:
(1) The purchase, sale, distribution, or possession of any material, compound, mixture, preparation, supplies, equipment, or structure with the intent that it be used for the unlawful manufacture of a controlled dangerous substance.
At trial, Off. Channell testified that after he pulled Linn over and Linn had exited his vehicle, Off. Channell requested to see Linn's vehicle registration and proof of insurance. Linn went to the passenger's side to retrieve it, and Off. Channell went to the driver's side (for safety reasons), looking into the vehicle with his flashlight "to see what he might be grabbing." Officer Channell testified that he saw a 50-pound bag of caustic soda and a clear tube in the front seat and a 40-pound bag of ammonium sulfate, acetone, camp fuel, and "liquid heat" in the back seat. As Off. Channell testified, he recognized all of these items from his training as "basic sources of a clandestine lab." He also stated that all of the items were in plain view in Linn's vehicle. Officer Channell then arrested Linn and advised him of his Miranda rights, and, according to Off. Channell, Linn responded that he understood his rights. Officer Channell testified that Linn said that he knew the items in the car were used for making methamphetamine and that Linn was supposed to go with two other men later to "cook" the substance.
Officer Channell testified that he also located the following in Linn's vehicle: a block of dry ice in the front passenger seat; a bottle of hydrogen peroxide; an empty box of Claritin; four lithium batteries; black electrical tape; a gallon pitcher; a clear mesh strainer; approximately 150 Claritin tablets; a two-gallon gas can; three syringes; and, a 60-ounce jar. Additionally, Off. Channell stated that Linn had store receipts showing purchases of most of the items. Officer Channell explained that he had been trained to recognize the components necessary to make methamphetamine, and he had thus recognized the items in Linn's vehicle as such. He also testified that Linn had indicated to him he was going to use the syringes to shoot up methamphetamine after it had been manufactured. Finally, Off. Channell stated that he again gave Linn his Miranda rights at the police station and read to him a rights form that Linn signed. According to Off. Channell, Linn then told him that the components in the vehicle were used for making methamphetamine, he had bought all the ingredients, and he had been using the substance for twenty years.
Officer J.D. Phill, who at the time of the incident worked for the Vivian Police Department, also testified at Linn's trial. He corroborated Off. Channell's testimony regarding the items found in Linn's vehicle and Linn's statements to Off. Channell, including Linn's admissions that the syringes were used for shooting up and "everything in the back seat was used for a meth lab."
Linn also disputes the testimony of Sgt. Carl Townley who was qualified without objection as an expert in narcotics. He testified that he taught "basic narcotics," an advanced narcotics class, and a methamphetamine lab class. Sergeant Townley testified that he had actually cooked methamphetamine at several lab schools, that he had testified in 50-100 cases, including 25-30 methamphetamine cases, and that he had been tendered as an expert in clandestine methamphetamine laboratories. Sergeant Townley testified about the "Nazi method" of making methamphetamine and how the various items found in Linn's vehicle were used in that method. He also indicated that there were other *775 "recipes" as well. It was Sgt. Townley's expert opinion that the combination of ingredients found in Linn's vehicle were to be used for the manufacture of methamphetamine.
Although Linn's son, Daniel, testified that the items found in his father's vehicle were all legally obtained by Linn and were to be used for various legal reasons around the Linn residence, the jury was clearly within its province to reject his testimony and accept the testimony of Off. Channell and Sgt. Townley. The testimony of the law enforcement officers was not conflicting and appears to be entirely credible and believable from the record before us. The fact that the materials in Linn's vehicle might have legitimate, legal, alternative uses did not defeat the testimony of Off. Channell that his training taught that such items were commonly used to make methamphetamine. Nor does Daniel's testimony negate Sgt. Townley's expert opinion that the items were likely going to be used by Linn to make methamphetamine, or Offs. Channell's and Phill's testimony that Linn admitted he was going to use the items to make methamphetamine. Clearly, there was sufficient evidence for this jury to determine that the essential elements of this crime existed to convict Linn. This assignment of error is without merit.

Ineffective Assistance of Counsel
In his second pro se assignment of error, Linn argues that he was denied effective assistance of counsel because his trial attorney failed to order the production of the preliminary examination hearing transcript for use to impeach Off. Channell. Linn argues that Off. Channell stated that he was coming from the airport when he spotted Linn's vehicle at the intersection of Redbud and Airport Road; however, according to Linn, this location is not within the city limits of Vivian, which made Off. Channell outside his jurisdiction and without authority to make the arrest. Linn also seems to argue that there are other discrepancies between Off. Channell's preliminary examination testimony and his trial testimony and that Linn was prejudiced by his trial counsel's failure to order the production of the transcript.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief ("PCR") in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Williams, 33,581 (La.App. 2d Cir.06/21/00), 764 So.2d 1164. A motion for new trial is also an accepted vehicle by which to raise such a claim. Id. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Lane, 40,816 (La.App. 2d Cir.04/12/06), 927 So.2d 659, 669, writs denied, XXXX-XXXX (La.12/15/06), 944 So.2d 1283, 2006-2502 (La.05/04/07), 956 So.2d 599.
However, this is not the exceptional case in which the issue of ineffective assistance of counsel should be resolved on direct appeal rather than on an application for post-conviction relief. Moreover, there is no evidence in the record that tends to support Linn's assertions. Notably, Linn's claims of ineffective assistance of counsel have never been argued to any court and at this point are mere assertions. Considering that the record is insufficient for this court to review the issue of ineffective assistance, we conclude that Linn's remedy is post-conviction relief wherein the quality of the attorney's performance can be fully developed and explored in an evidentiary hearing.

*776 Expert Testimony

In another pro se assignment of error, Linn complains that the trial court erred in allowing Sgt. Townley to state his opinion that the components found in his vehicle were going to be used to produce methamphetamine. Linn asserts that allowing "this line of opinionated testimony" to be heard prejudiced his defense and warranted a mistrial. Obviously, Linn does not understand that Sgt. Townley was qualified as an expert without objection so that he could offer his opinion to be used against Linn. This assignment of error is completely without merit.

Illegal Seizure
In his final pro se assignment of error, Linn makes more than one contention; however, the essence of his argument is that the evidence found in his vehicle which was used to convict him was illegally seized, because it was obtained by a warrantless search. Additionally, Linn argues that the evidence was seized in his driveway on private property not within the jurisdiction of the Vivian City Police. He also argues that the arrest was made on mere suspicion and not probable cause; his property was searched and the items seized without a warrant absent exigent circumstances; and, the stop was made on a pretext. He even tries to make a patently erroneous argument that Off. Phill's testimony showed he worked for the Blanchard Police rather than the Vivian Police. Considering the facts of the case, none of his arguments have merit.
When a warrantless search is conducted, the state has the burden of showing the search was justified as an exception to the warrant requirement of the Fourth Amendment. One exception to the warrant requirement is the plain view doctrine. State v. Young, 39,546 (La.App. 2d Cir.03/02/05), 895 So.2d 753. The plain view doctrine renders a warrantless search reasonable: (1) if the police officer is lawfully in the place from which he views the object; (2) where the object's incriminating character is immediately apparent; and (3) the officer has a lawful right of access to the object. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 2310, 110 L.Ed.2d 112 (1990); State v. Nolen, 29,284 (La.App. 2d Cir.04/04/97), 691 So.2d 379.
An officer who peers into the interior of a vehicle during a legitimate traffic stop is not conducting a search within the meaning of the Fourth Amendment. State v. Schouest, 351 So.2d 462 (La.1977); State v. Young, supra. The officer's use of a flashlight is permissible when there is a need to do so, such as officer safety. State v. Young, supra.
Furthermore, there is absolutely no evidence to indicate that the stop of the vehicle was made on a pretext. Officer Channell testified that he was patrolling, looking for traffic infractions, when he spotted the vehicle Linn was driving with a burned-out headlight. Thus, Off. Channell had probable cause for the stop. Notably, the constitutional reasonableness of a traffic stop does not depend on the actual motivation of the individual officer involved. Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).
The geographical jurisdiction question already has been discussed and, as noted, there is no evidence that the stop was made outside the jurisdiction of the Vivian Police. As for the arrest, Off. Channell's testimony established, without contradiction, that a number of the methamphetamine supplies were in plain view in Linn's vehicle. Officer Channell had a right to peer into the car's interior while making the traffic stop, and the items' incriminating character was immediately apparent to Off. Channell, who had training on the *777 specific crime. This assignment of error is without merit as well.

Sentencing
On the issue of sentencing, Linn's appeal counsel raises two assignments of error and Linn, pro se, raises another. As we noted herein, the trial court sentenced Linn to eight years of hard labor; however, it neglected to give any reasons for the sentence. Furthermore, as already stated, Linn's trial counsel filed a motion to reconsider sentence, and Linn himself filed a motion to reconsider sentence. In its written opinion, the trial court stated that it would consider the filings as a motion to amend, but the trial court denied the motions on the basis that it was without authority to amend or modify the sentence after the sentence had commenced.
The provisions of La. C. Cr. P. art. 881.1(A)(1) state that in felony cases, within 30 days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence. In the instant case, the motions for reconsideration were timely filed, and the trial court erred in concluding otherwise by considering the filings as a motion to amend. However, as acknowledged by the state on appeal, the trial court did not provide any reasons for the sentence imposed and did not refer to La. C. Cr. P. art. 894.1 at sentencing. Thus, even though the trial court failed to properly address the motions for reconsideration, we will not order the trial court to address those motions now because we vacate Linn's sentence and remand for further articulation of the basis for the sentence imposed. See State v. Saunders, 393 So.2d 1278 (La.1981); State v. Williams, 567 So.2d 735 (La.App. 2d Cir. 1990). Furthermore, because the sentence should be vacated for failure to articulate the basis of the sentence, this court need not address the assignments of error directed at the sentence other than perhaps to note the timeliness of the motions for reconsideration.

CONCLUSION
For the foregoing reasons, James Frederick Linn's conviction is affirmed. However, his sentence is vacated and the matter remanded to the trial court for resentencing.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.