414 So.2d 1210 (1982)
STATE of Louisiana
v.
Terry Wayne HOWARD.
No. 81-KA-1541.
Supreme Court of Louisiana.
February 12, 1982.
Rehearing Denied March 26, 1982.
*1212 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., L. K. Knapp, Jr., Dist. Atty., Robert R. Bryant, Jr., Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Scotty G. Rozas, Karen Lee Price, Lake Charles, for defendant-appellant.
FRED W. JONES, Jr., Justice Ad Hoc[*]
Terry Wayne Howard was indicted for aggravated rape (La.R.S. 14:42) and aggravated burglary (La.R.S. 14:60); found guilty by jury of attempted aggravated rape and aggravated burglary; and sentenced to 50 years imprisonment on the attempted aggravated rape conviction and 30 years imprisonment on the aggravated burglary conviction, with the sentences to run concurrently. In this appeal defendant relies upon seven assignments of error.
According to the record, on the night of August 10, 1980 a young white male broke into a dwelling occupied by two elderly women, Mrs. D and Mrs. S, by thrusting his fist through the glass portion of a door and unlocking it. The intruder entered the room where Mrs. S was sleeping, grabbed her and took her into Mrs. D's bedroom. He pushed Mrs. S onto the bed with Mrs. D and, after pulling down Mrs. S's pajamas, attempted to have sexual intercourse with this 86 year old female who was resisting to the full extent of her physical ability. The burglar struck Mrs. D when she attempted to hit him with her cane.
Following his assault upon Mrs. S, the assailant took Mrs. D's money and went back into Mrs. S's bedroom to get her cash. After threatening the women with death if they called the police, the burglar departed the premises through the front door. The women immediately notified the police of the crimes.
Defendant was subsequently apprehended, gave an inculpatory statement to the police, and was charged with the offenses in question. Mrs. S was unable to identify defendant as her assailant, explaining that she never got a good look at him. However, at the trial on the merits Mrs. D pointed defendant out as the burglar of her residence.

Assignments of Error Nos. 1 & 2
Defendant complains that the trial judge erred in ordering his arraignment on *1213 the date set for trial and in denying his motion for a continuance based upon this conjunction of arraignment and trial.
As explained by the trial judge's per curiam addressing the question, because a sanity commission was requested and appointed when defendant first appeared before a judge and because a similar indictment was pending, formal arraignment of defendant before his trial date was overlooked. This fact was noted and called to the attention of defendant, all counsel and the trial judge only after the case was called for trial and requests for excusal by members of the jury venire were being considered.
Thereupon, defendant was called for arraignment, entered a plea of not guilty and declined to waive trial by jury. Defendant's motion for a continuance of his trial, based upon the argument that a defendant should not be arraigned and tried on the same day, was denied. Jury selection then proceeded.
If defendant had never been arraigned and entered upon trial without objection to this defect, he would be deemed to have waived his right to arraignment. La.C. Cr.P. Art. 555. Consequently, the mere fact that defendant was arraigned and his trial began immediately thereafter is not per se prejudicial. Whether this constituted grounds for a continuance is another matter. There is, however, nothing in the record indicating that defendant was hampered in any way in the preparation for trial by the lack of time between arraignment and trial. Therefore, we cannot say that the trial judge abused his discretion in denying the motion for continuance.
These assignments lack merit.

Assignment of Error No. 5
Defendant contends his confession was erroneously admitted into evidence by the trial court; that, rather than being free and voluntary, the inculpatory statement resulted from deputy sheriffs' pressures and promises and defendant's emotional instability.
At the hearing on the motion to suppress defendant's confession, it was established that on August 29, 1980, defendant was arrested and brought to the Calcasieu Parish jail on a rape charge unrelated to this case. At approximately 9:30 P.M. on August 30, 1980, Deputy Laudumiey, an investigator with the sex crimes division of the Calcasieu Parish Sheriff's office, approached the incarcerated defendant to request a blood sample. She advised defendant of his constitutional rights and questioned him briefly, but defendant denied any involvement in the crime at issue.
After defendant returned from giving the blood sample at the hospital, Laudumiey got him out of jail (a little after midnight on August 31, 1980) and took him for questioning in the sheriff's office. This interrogation continued for 15 or 20 minutes. Defendant again denied any responsibility for the rape under investigation by that deputy.
On September 2, 1980, Deputy Delouche informed Deputy Laudumiey that he was acquainted with the defendant and, since Laudumiey was making little progress in her interrogations, offered to question defendant. When Laudumiey accepted the offer of assistance, Delouche brought defendant from jail to the sheriff's office. Prior to questioning defendant, Delouche advised him of his Miranda rights in the presence of Deputy Fryor. Defendant signed a form indicating that he understood those rights and desired to waive them. When the defendant again denied any responsibility for the rape, Delouche replied that he did not believe defendant and that defendant would feel better if he told the whole story and got the matter off his conscience. Defendant then confessed committing the rape for which he was under arrest and also the crimes in this case. After interrogating defendant for about 20 minutes, Delouche turned him over to Deputies Laudumiey and Miller.
Laudumiey and Miller also advised defendant of his Miranda rights and defendant executed the standard waiver form. Defendant confessed to these officers his *1214 commission of the crimes in question. The detailed statement was recorded, transcribed and signed by defendant. This final interrogation lasted about two hours.
In order for an inculpatory statement to be admissible in evidence against an accused at trial, the state must prove beyond a reasonable doubt that the statement was given freely and voluntarily and was not the product of either pressure or promises. State v. Campuzano, 404 So.2d 1217 (La.1981). Once the trial judge determines the state has discharged its burden, his conclusions on the credibility and weight of the testimony will not be overturned as long as they are supported by the evidence. State v. Haynie, 395 So.2d 669 (La.1981).
The defendant testified in this case that Deputy Delouche offered to talk to the district attorney and to help him in any way he could. On the other hand, all of the officers present when defendant confessed denied making promises to induce the confession. In ruling that the confession was free and voluntary, the trial judge obviously disbelieved it was the result of promises alluded to by defendant. Since the trial court's determination was amply supported by evidence in the record, we cannot say this was an incorrect holding.
Defendant further argues, impliedly, that the voluntariness of the confession was negated by his emotional instabilityfor which, along with a drug abuse problem, he had previously been institutionalized.
Although the defendant is not required to prove a particular kind of insanity, it is his responsibility to introduce evidence of his own mental abnormality. Although the state must in all other respects prove beyond a reasonable doubt that the confession was voluntary, the state is not required to negate a mental abnormality which the defendant alleges but fails to prove. State v. Glover, 343 So.2d 118 (La. 1977).
Defendant testified that he felt nervous, depressed and under considerable pressure during his interrogation by the deputies. The officers conceded that defendant appeared to be nervous, but stated that he also seemed quite alert and well aware of the nature of the proceedings. The record is devoid of any evidence that defendant was suffering from any mental abnormality when giving his confession that destroyed the voluntariness of that inculpatory statement.
This assignment is without merit.

Assignment of Error No. 7
This assignment involves the contention that the trial judge abused his discretion in denying a motion for continuance of the trial in order that defense counsel could have an opportunity to locate alibi witnesses whose names had just been revealed by defendant.
In his per curiam dealing with this assignment, the trial judge states that, in an in camera conference, defense counsel informed him and the prosecutor of defendant's recent disclosure of the names of the alleged alibi witnesses. The prosecutor agreed to a continuance provided defendant submitted to a polygraph examination administered by a local deputy sheriff and passed that examination. Defendant took the test and failed it. Thereupon, the trial judge denied his motion for a continuance.
As it later developed, all of the alibi witnesses except one testified at the trial. The exception was a "girl friend" whose name defendant either could not remember or who was not accurately identified in defendant's disclosure to his attorney. Further, defendant failed to establish a probability that this witness, in the event of a continuance, would be available to testify at a later trial. See State v. Gordy, 380 So.2d 1347 (La.1980).
The trial judge did not abuse his discretion in denying this motion for a continuance.
This assignment lacks merit.

Assignment of Error No. 8
Defendant complains that the trial judge erred in denying his request to present the *1215 testimony of a witness in surrebuttal after the state presented its case in rebuttal and rested.
In his per curiam to this assignment the trial judge stated:
"Three witnesses testified on behalf of the defendant, in addition to the defendant himself, during the trial. Two of them, Gene Rogers and Charles Rogers, related events markedly different from the third, Charles Wilson, also known as `Chico.' Chico testified essentially that after several hours of drinking at a local bar on the evening of the offense, he had driven the defendant to and let him out of his vehicle at Broad Street and Boston Street in Lake Charles. Ostensibly, so defendant could go to the residence of a girl friend nearby on Boston Street.
"Gene Rogers had testified that the four of them had been drinking and that he and the defendant parted, each without transportation, in front of the Belmont Motel, which is about one mile East on Broad Street from where Chico said he transported the defendant to at an earlier time. Gene Rogers further testified that he, Rogers, was walking to his home about one-half block North of their point of separation. He remarked that the defendant said he was going to take a `short cut' to his mother's house which is on Ninth Street. Ninth Street is parallel with, and nine blocks South of Broad Street. The home of the victim was on Dumatrait Street about one-half block South of Broad Street. Dumatrait Street runs South from Broad Street, adjacent to the Belmont Motel, going toward Ninth Street. The time of their parting was not long before the attack upon the victim.
Defendant testified in corroboration of Chico as to their parting and claimed that he telephoned for a Checker Cab from his girl friend's house about 2:30 a. m., and was taken by it to his mother's home on Ninth Street.
"The defense rested after defendant's testimony.
"In rebuttal, the State recalled one of the officers who took defendant's confession, then Court was adjourned overnight.
"The next morning the State presented the testimony of the manager of Checker Cab Company, who testified from company records that no telephone call was received by the company from or near Boston Street; that no trip originated in that area and none terminated on Ninth Street or near defendant's mother's home during a twelve-hour period covering the time in question.
"The State presented one further witness in rebuttal of other testimony of the defendant and then rested.
"Counsel for defendant then moved to reopen the trial. Outside the presence of the jury, counsel stated that the evening before, an investigator assisting him had located the `girl friend' on Boston Street.
"During a chambers conference about this problem, the Court was advised by counsel for the State, in the presence of defense counsel, that he had that morning questioned this woman and that she was not able to give any dates[1] or otherwise identify the times defendant came to her house in the middle of the night. Defense counsel took no issue with that statement.
"The end result of taking the unusual course of permitting surrebuttal appeared to be, at the most, some confirmation that defendant did on occasion go to the home of a female on Boston Street in the middle of the night. Since there was no showing that the State withheld any evidence from its case in chief or did not confine its rebuttal to matters raised on defense, the Court denied the motion to reopen."
*1216 La.C.Cr.P. Art. 765(5) provides that in the normal order of trial there is presentation of evidence by the state, by the defendant, and by the state in rebuttal. However, the trial court in its discretion may permit the introduction of additional evidence prior to argument.
Under the circumstances obtaining in this case, the trial judge did not abuse his discretion in denying defendant's request to present additional evidence prior to argument.
This assignment is without merit.

Assignment of Error No. 10
The basis of this assignment is essentially the same as that for No. 8, since defendant here argues that a new trial should have been granted to enable him to present the testimony of the witness whose testimony he sought to present after the state rested and prior to argument.
In order to obtain a new trial on the basis of newly discovered evidence defendant must demonstrate (1) that the evidence was not discoverable before or during trial despite the exercise of reasonable diligence and (2) that if the evidence had been introduced at the trial it would probably have changed the guilty verdict. La.C.Cr.P. Art. 851(3).
In his brief, defense counsel concedes that this evidence was actually discovered while the trial was in progress. Further, as pointed out by the trial judge, the testimony of this witness would have, at best, been only speculatively corroborative and probably would not have changed the verdicts.
This assignment is without merit.

Assignment of Error No. 11
Defendant contends the sentences imposed, the maximum penalties provided by law for these offenses, are excessive because the trial judge did not consider pertinent mitigating circumstances, such as the age of the defendant, his lack of a criminal record, his use of drugs on the night of the offense, and the fact that defendant did not use a weapon during the course of these crimes.
Adequate review mandates that the trial judge state specific reasons for an apparently severe sentence in relation to the particular offender and the actual offense. While the trial judge need not articulate every aggravating and mitigating circumstances presented in La.C.Cr.P. Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Guiden, 399 So.2d 194 (La.1981). The trial judge's reasons in imposing sentence are an important aid to this court when called upon to exercise its constitutional function to review a sentence complained of as excessive. State v. Spencer, 374 So.2d 1195 (La.1979).
Although the trial judge in this case did not articulate every aggravating and mitigating circumstance set forth in Art. 894.1, we find the following comments made by him prior to sentencing defendant adequately complied with this requirement:
"The two ladies who were victims of the defendant, both of whom are past the age of 85 yrs., had lived together for over 30 yrs. While Mrs. D was ailing, she was able to live in her home with the assistance of Mrs. S. Mrs. S, the victim of the attempted rape, although aging and somewhat infirm, was still contributing to society, not only by her care of her friend, Mrs. D, but by being employed as a housekeeper in a Catholic rectory. In fact, she had worked the day before the attack. The lives of both these ladies have been shattered by the defendant. Because of injuries sustained by her in this crime, Mrs. S was hospitalized for a lengthy time and is now an invalid. Both ladies must now live with and be cared for by relatives, their intentions to live together, enjoy the personality and relationship of each other, having been irrevocably shattered along with the breaking glass when the defendant crashed into their world.
"Defendant's deliberate conduct threatened and caused serious harm to his victims, and the Court is unable to find any *1217 factor tending to in any manner excuse his conduct.
"This Court has not been exposed to an instance where the defendant's intentions were more coldbloodelly deliberate.
"There was testimony, highly unreliable and conflicting, about his having been drinking to excess that night. However, the reliable testimony shows him to have been in obvious control of a situation he created."
It is in this context that we consider whether the sentences imposed are excessive.
As a general rule a sentence is excessive "if it is grossly out of proportion to the severity of the crime, or if it is nothing more than the purposeless and needless imposition of pain and suffering." State v. Bonanno, 384 So.2d 355, 357 (La. 1980). The trial judge is given a wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Sepulvado, 367 So.2d 762 (La.1979).
Our review of the record convinces us that, though severe, the sentences imposed are fully justified by the gravity of the offenses and the characteristics of this defendant. Rather than being arbitrary, these sentences represent a studied effort by the trial judge to mete out appropriate punishment. The trial judge did not abuse his discretion; the sentences are not excessive; and there is no merit to this exception.
Decree
Finding no reversible error in defendant's assignments of error, we affirm his convictions and sentences.
NOTES
[*] Judges O. E. Price of the Court of Appeal, Second Circuit, John C. Boutall, Court of Appeal, Fourth Circuit, and Fred W. Jones, Jr., Court of Appeal, Second Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Justices Pascal F. Calogero, Jr., Walter F. Marcus, Jr., James L. Dennis and Jack C. Watson.
[1] In fact, her affidavit, attached to the motion for a new trial, demonstrates that her testimony would show she was not even sure of the month during which defendant last came to her. Her testimony would have been worthless so far as tending to confirm an alibi for the defendant.