927 So.2d 659 (2006)
STATE of Louisiana, Appellee
v.
Eddie Robert LANE, Jr., Appellant.
No. 40,816-KA.
Court of Appeal of Louisiana, Second Circuit.
April 12, 2006.
*662 Louisiana Appellate Project by Peggy J. Sullivan, Monroe, for Appellant.
Eddie Robert Lane, Jr., pro se.
Paul J. Carmouche, District Attorney, Dhu Thompson, Ron C. Stamps, Assistant District Attorneys, for Appellee.
Before STEWART, CARAWAY and DREW, JJ.
STEWART, J.
The defendant, Eddie Robert Lane, Jr., was convicted of armed robbery. He was sentenced as a fourth felony offender to life imprisonment at hard labor without benefits. For the reasons explained herein, we affirm his conviction and sentence.

FACTS
In the early morning hours of March 12, 2004, Yolanda Burnom drove to meet friends at the H and H Lounge in Shreveport. She testified that the defendant first stopped her as she entered the club and that he sat in the passenger seat of a white Buick at that time. She said that he asked her if she "had a smoke" and that she replied that she did not smoke or drink. After staying in the club approximately 30 to 45 minutes, Burnom walked out to call a friend on her cell phone.
While she talked on the phone and unlocked her car door, Lane pointed a gun at her side, told her to get off of the phone, and demanded money. Burnom identified the gun as a Glock .09-mm, explaining that she had completed firearms training while contemplating working for the sheriff's department before deciding to instead attend graduate school. She stated that she had also learned about firearms in her career as a readjustment counselor for veterans. She testified that she put the cell phone on the driver's seat and tried to tell her friend what was happening. Burnom then lied to the defendant and told him that she was an FBI agent and that he should not rob her. She testified that this conversation continued for about 20 minutes. She finally gave him $15.00, and he started patting her down. Burnom pushed him and ran toward an officer that she had seen parked near the club. Burnom told Corporal Joseph "J.M." Sharpley her account of the events. She stated that after talking to Sharpley, she realized that the defendant had also stolen another wallet with money, a Palm Pilot, and her car keys.
Burnom started her car with an extra set of keys and gave a friend a ride home. While driving her friend home, Burnom saw Lane approximately three blocks away. She stated that she rolled the window down and told her friend that Lane was the man who had robbed her. Burnom testified that the defendant started backing up when he noticed her, dropped his beer, and took off running. Burnom then called the police and reported seeing the defendant. Burnom later testified that she received information the next day that included the defendant's nickname and first name as well as his address. At trial, Burnom identified the defendant as the man who robbed her.
Corporal Sharpley testified that Burnom was shaking and upset when he arrived on the scene. He said that the victim told him that the defendant had held what appeared to be a Glock handgun at her side and demanded her money. He corroborated Burnom's account of the items she claimed that the defendant had taken and Burnom's statement about the incident and her subsequent call to the police except regarding whether she gave police a license *663 plate number. Sharpley also testified that he took fingerprints from the car door, but that attempts to match the prints had been inconclusive.
Detective Michael McConnell testified that Burnom talked to him about the man she spotted with Lane one hour after the robbery. From that conversation, she was able to give police the defendant's name, nickname (Pootie Loc), and a partial address. McConnell stated that he arrested the defendant about 14 days after the robbery. He stated that Burnom identified the defendant from a photo lineup without hesitation.
The defense called Laquondra Golston who testified that she owned a white Oldsmobile, a car similar to the one in which the victim stated she saw the defendant sitting. She said that she had driven the car to the H and H Lounge that night, but that she did not know Lane very well and that no one had been in her car that night except her.
Following a trial, the defendant was convicted of armed robbery. He was adjudicated a fourth felony offender and was sentenced to life imprisonment at hard labor without benefits.

DISCUSSION

Sufficiency of Evidence
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64. The proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a judge or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, 02-3090 (La.11/14/03), 858 So.2d 422. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.6/26/98), 719 So.2d 1048.
*664 The defendant argues that the victim's testimony was not corroborated and was insufficient to support the conviction. He claims that she should have given a more detailed description of the robber. The defendant argued that the tattoos on his face would have been the first thing she should have seen and described, yet the victim did not mention this obvious physical feature. He also argues that the fingerprints taken were never identified as his. He argues that while the victim said she saw him sitting in a car, the owner of the car testified that she had gone to the club alone and that the defendant had no access to the car. Lane asserts that the victim only claimed she knew he was the robber when she saw him later because she saw a young black man wearing similar clothing. Lane contends that the entire basis of her identification of him stems from this sighting.
The state counters that the victim's testimony about the identity of the man who robbed her was supported by her brief conversation with the defendant before entering the club, personal observations during the robbery, and seeing him drop his can of beer and run when she saw him later that night at a different location. The state claims that the victim identified the defendant as the robber from a photo line-up. The state argues that the car owner's testimony actually supported the victim's testimony because it proved that the automobile the victim described was at the club at the time of the robbery.
We find that the victim's identification of the defendant as her assailant is supported by the evidence. She identified the defendant as the man who robbed her in the photo lineup and in court. During her in-court identification of the defendant, Burnom pointed out the tattoos on the side of his face. The evidence as to identity presented on rebuttal is discussed below in the first pro-se assigned error. The victim had multiple opportunities to observe the defendant on the date of the robbery. She identified him without hesitation during the photo lineup. While the fingerprints were not matched to the defendant, the evidence presented was sufficient to support the victim's identification of the defendant as the robber.
Finally, Laquondra Golston, the owner of a white Oldsmobile, testified that she drove her car to the H and H Lounge that night with other people. She said that she knew the defendant, but that she never allowed him access to her vehicle. Golston's testimony put the car at the scene where the victim stated she had seen it. The victim's credibility in testifying as to the defendant's identity was a decision for the jury, and this court accords great deference in that decision. Therefore, this assignment is without merit.

Adjudication as a Fourth Felony Offender
The defendant argues that he should not have been adjudicated a fourth felony offender because he was not advised of enhancement penalties and the right to compulsory process at the prior pleas. The state argues that case law does not require counseling that the guilty plea may later be used to enhance the penalty of a subsequent conviction. The state also claims that the trial court is not required to advise the defendant of the right to compulsory process in order to insure that a guilty plea is knowingly and intelligently made. In a habitual offender proceeding, the state is only required to establish a prior felony conviction and that the defendant is the person convicted of the earlier offense. State v. White, supra.
A valid guilty plea requires a showing that the defendant was informed of and waived his constitutional rights of trial by jury and confrontation and the privilege against compulsory self-incrimination. *665 Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971). La. C. Cr. P. art. 556.1 requires that in a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:
(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.
(2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if financially unable to employ counsel, one will be appointed to represent him.
(3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.
(4) That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial.
The article also provides that the trial court must determine that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. Id.
In State v. Shelton, 621 So.2d 769 (La.1993), the Louisiana Supreme Court discussed the state's burden of proof in a habitual offender proceeding as follows:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. (Footnotes omitted.)
Neither Boykin, nor La. C. Cr. P. art. 556.1, Louisiana's guilty plea requirement statute, include the right to compulsory process. State v. Crayton, 34,990 (La. App.2d Cir.9/26/01), 796 So.2d 87. A court is not required to inform a defendant that his guilty plea may be used as a basis for the filing of a future multiple offender bill. State v. Nuccio, 454 So.2d 93 (La.1984); State v. Jackson, 31,849 (La.App.2d Cir.3/31/99), 734 So.2d 54.
The state filed a fourth felony habitual offender bill of information listing the instant *666 conviction and the defendant's prior guilty pleas for simple robbery in 2001, illegal possession of stolen things in 1997, and aggravated battery in 1995. The state presented bills of information, minutes, and plea transcripts from each of the prior convictions. The defense counsel filed an objection to the habitual offender bill of information, alleging that all three guilty pleas were defective because the court did not inquire into the defendant's background, determine his proficiency in the English language, advise him of his right to compulsory process, or advise him that the guilty plea could be used to enhance future sentences. Those objections were argued orally immediately before the hearing on habitual offender adjudication and were denied, with the trial court noting the defense counsel's objections for the record.
The minutes for each of the three pleas state that the defendant was informed of his rights as per Boykin v. Alabama. The record shows that the defendant was advised by counsel at each of the hearings where a guilty plea was entered. The transcripts for each of the three convictions show that the defendant was advised of his right to a jury trial, the right to confrontation, and the right against self-incrimination. The objection regarding inquiry into the defendant's ability to understand English was not raised in the assigned error. However, the defendant told the court he had a GED in 1995, was asked if he could read and write English in 1997, and was again asked if he could read and write in 2001.
As noted by this court in Crayton, supra, the advisement of a defendant to the right of compulsory process is not required by Boykin, supra, or La. C. Cr. P. art. 556.1. See also State v. Salter, 515 So.2d 609 (La.App. 1 Cir.1987), where that court held that advisement of the right to compulsory process is not required to insure that a guilty plea is knowingly and intelligently made. Therefore, the defense's argument regarding the failure of the trial court to advise the defendant as to his right of compulsory process at the prior pleas fails to show error in the habitual offender adjudication.
The trial court informed the defendant of the possible sentencing range before accepting his guilty pleas in 1995, 1997, and 2001. At the plea hearing in 2001, the trial court also informed that his guilty plea could be used against him in the future under habitual offender sentencing. The same advisory warning about future implications of the guilty pleas was not given in 1995 or 1997. However, as stated in Nuccio, supra, and Jackson, supra, a court is not required to inform a defendant that his guilty plea may be used as a basis for the filing of a future multiple offender bill.
Sgt. Owen McDonnell of the Caddo Parish Sheriff's Office was qualified as an expert witness in fingerprint examination and comparison. He identified the fingerprints on the bills of information for the convictions in 1995, 1997, 2001, as matching those taken of the defendant that day in open court. The court took judicial notice of the defendant's conviction in 2005. The court then adjudicated the defendant as a fourth felony offender. No objections were made. As a result, the state proved the existence of the prior convictions and that the defendant was the same person convicted of those offenses. This assignment is without merit.

Excessive Sentence
The defendant argues that the life sentence of imprisonment without benefits was constitutionally excessive and that the trial court failed to discuss factors considered under La. C. Cr. P. art. 894.1. The state claims that the sentence was mandatory for a fourth felony offender and that *667 the trial court considered the sentencing guidelines.
Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than 10 years and for not more than 99 years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64(B.). Any person adjudicated a habitual offender when the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(13), shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence. La. R.S. 15:529.1(A.)(1)(c)(ii).
The mandatory life sentences the habitual offender law requires are presumptively constitutional and should be accorded great deference by the judiciary. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 675; State v. Wade, 36,295 (La. App.2d Cir.10/23/02), 832 So.2d 977, writ denied, 2002-2875 (La.4/4/03), 840 So.2d 1213. Johnson and Wade, supra, also held that the burden was on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. To do so the defendant must "clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." Johnson at 676; Wade, supra.
Because the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court's compliance with La. C. Cr. P. art. 894.1 is not required. State v. Gay, 34,371 (La.App.2d Cir.4/4/01), 784 So.2d 714; State v. Owens, 32,642 (La.App.2d Cir.10/27/99), 743 So.2d 890, writ denied, XXXX-XXXX (La.9/29/00), 769 So.2d 553. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article when the court had no discretion in sentencing the defendant. State v. Johnson, 31,448 (La.App.2d Cir.3/31/99), 747 So.2d 61, writ denied, 99-1689 (La.11/12/99), 749 So.2d 653, cert. denied, Johnson v. Louisiana, 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000).
The defendant filed a "motion to deviate from the constitutionally excessive fourth felony habitual offender sentence," alleging that the sentence was excessive and requesting that the trial court deviate from the mandatory sentencing guideline. The defendant also filed a motion to reconsider sentence, alleging mere excessiveness. Both motions were denied. Because the defendant's motions alleged mere excessiveness, he is simply relegated to having the appellate court consider the bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993).
The court imposed a sentence of life imprisonment without benefits, as mandated by the habitual offender law for fourth felony offenders. The crimes of violence upon which this sentence was predicated include the present conviction of armed robbery entered on January 13, 2005, the conviction for simple robbery on April 23, 2001, and the conviction for aggravated battery on December 18, 1995. The mandatory life sentence is presumptively constitutional and should be accorded great deference by the judiciary. Wade, supra. The trial court did not list factors under La. C. Cr. P. art. 894.1 considered during the sentencing; however, this was not required. Gay, supra; Owens, supra. This assignment is without merit. Rebuttal Evidence
In a pro se assignment of error, the defendant argues that the state raised new issues on rebuttal and that he was *668 deprived of his rights to defend against those issues. He claims that the state should have raised the evidence as part of its case-in-chief. Finally, he states that the introduction of the evidence on rebuttal caused great prejudice and deprived him of a fair and impartial trial. The state argues that Golston's testimony that the defendant could not have been in her car that night raised the issue of identity, and that the rebuttal evidence was offered to counter that evidence. The state claims that the rebuttal evidence further corroborated the previous identification made by the victim.
Generally, the discovery rules of the Louisiana Code of Criminal Procedure are intended to eliminate unwarranted prejudice which could arise from surprise testimony. State v. Young, 37,673 (La.App.2d Cir.12/5/03), 862 So.2d 312, writ granted in part (as to sentencing), denied in part, 04-0029 (La.5/14/04) 872 So.2d 505; State v. Richardson, 33,272 (La.App.2d Cir.11/1/00), 779 So.2d 771, writ denied, 00-3295 (La.10/26/01), 799 So.2d 1151. Since the state does not and cannot know what evidence the defendant will use until it is presented at trial, the state is given the right of rebuttal. State v. Gantt, 616 So.2d 1300 (La.App. 2d Cir.1993), writ denied, 623 So.2d 1302 (La.1993).
Rebuttal evidence is that which is offered to explain, repel, counteract, or disprove facts given in evidence by the adverse party; in criminal cases, such evidence may be used to strengthen the state's original case. State v. Widenhouse, 582 So.2d 1374 (La.App. 2d Cir.1991), writ denied, 586 So.2d 567 (La.1991), cert. denied, 503 U.S. 910, 112 S.Ct. 1274, 117 L.Ed.2d 500 (1992); State v. Huizar, 414 So.2d 741 (La.1982). Control of the evidence presented by the state on rebuttal is within the sound discretion of the trial court and will not be disturbed, except in extreme cases such as when evidence was kept back deliberately for purpose of deceiving and obtaining undue advantage. State v. Williams, 445 So.2d 1171 (La. 1984); State v. Williams, 34,359 (La. App.2d Cir.5/9/01), 786 So.2d 203, writ denied, 01-2275 (La.5/10/02), 815 So.2d 835.
In his argument, the defendant does not question the admissibility of the actual evidence presented at trial, but merely whether the evidence was within the scope of permissible rebuttal. The state argued that the defense's witness raised a question of identity as she testified that the victim could not have seen the defendant in the white car. The defense counsel claimed that the prosecution should not be allowed to present rebuttal information as Golston's testimony had been about the defendant's lack of access to the car. The trial court granted the state's request to present demonstrative evidence on rebuttal. After some discussion and examination as to the proper form of presentation of the evidence, the defendant was ordered to stand, open his mouth, and allow the jury to view it.
The gap in the mouth was not mentioned in the victim's testimony during the prosecution's case-in-chief. However, the trial court has sound discretion in its ruling on allowing rebuttal evidence, except in extreme cases such as when evidence was kept back deliberately for purpose of deceiving and obtaining an undue advantage. There is no showing on the record that this evidence was deliberately held by the prosecution to gain an advantage through later presentation. Instead, the state argued that it presented the evidence to rebut the defense witness's testimony which brought into doubt the victim's identification of the defendant as the man in the witness's car that night. While probably unnecessary to prove the case, the *669 evidence was not admitted in error, and furthermore, is not reversible error. This assignment is without merit.

Jury Instructions
In a second pro se assignment, the defendant argues that the trial court failed to distinguish between direct and circumstantial evidence in its instructions to the jury. He also claims that the charge given by the court does not explain burden of proof for a case involving circumstantial evidence. He claims that defense counsel at trial was ineffective for his failure to object to the jury instructions.
Failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Marse, 365 So.2d 1319 (La.1978).
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Williams, 33,581 (La.App.2d Cir.6/21/00), 764 So.2d 1164. A motion for new trial is also an accepted vehicle to raise such a claim. Id. However, when the record is sufficient, this court may resolve this issue on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673; State v. Smith, 25,841 (La. App.2d Cir.2/23/94), 632 So.2d 887.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
The defendant's pro-se brief states that,
[t]he court should have charge [sic] the jury to the follows: [sic] Evidence is either direct or circumstantial. Direct evidence is evidence which if believed proves a fact. Circumstantial or indirect evidence is evidence which if believed proves a fact, and from that fact you may logically and reasonably conclude that another fact exists. You cannot find a defendant guilty solely on circumstantial evidence unless the facts proved by the evidence exclude every reasonable hypothesis of innocence. [sic]
However, review of the record shows that the appropriate instruction was given. The defendant follows with a claim that the trial court failed to explain the appropriate burden of proof and that counsel erred in failing to object to that omission. However, the record shows that the instruction was given, the trial court correctly gave the instruction regarding direct and circumstantial evidence, and that the defense counsel did not err in failing to object to the omission of an instruction that was, in fact, given. Therefore, this assignment is without merit.

*670 CONCLUSION
The evidence, when viewed in a light most favorable to the prosecution, is sufficient to support the guilty verdict of armed robbery. The defendant was properly adjudicated as a habitual offender, and the mandatory sentence imposed was not excessive. The trial court did not commit error in allowing the state to present the rebuttal evidence. The instruction regarding direct and circumstantial evidence was included in the jury instructions given at trial. For these reasons, we affirm the conviction and sentence.
AFFIRMED.