# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-0456


**STATE OF LOUISIANA**

**VERSUS**

**SCOTT LEE**


************

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF ST. LANDRY, NO. 06-K-6343-B
HONORABLE ELLIS J. DAIGLE., DISTRICT JUDGE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and J. David Painter, Judges.


**AFFIRMED.**


**Earl B. Taylor**
**District Attorney**
**Twenty-Seventh Judicial District**
**P.O. Drawer 1968**
**Opelousas, LA 70571**
**(337)948-3041**
**COUNSEL FOR APPELLEE:**
> **State of Louisiana**

**Edward K. Bauman**
**Louisiana Appellate Project**
**P.O. Box 1641**
**Lake Charles, LA 70602**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
> **Scott Lee**

PETERS, J.

The State of Louisiana charged the defendant, Scott Lee, with the offense of aggravated second degree battery, a violation of La.R.S. 14:34.7. After a jury found him guilty of the offense, the trial court sentenced him to serve six years at hard labor and ordered that he make restitution to the victim of the offense in the amount of $9,387.79. After the trial court rejected his oral motion for reconsideration of his sentence, the defendant perfected this appeal, asserting three assignments of error. For the following reasons, we affirm the defendant's conviction and sentence in all respects.

### Assignment of Error Number One

The charge against the defendant arises from a December 12, 2006 incident wherein he physically attacked his girlfriend, Gwendolyn Gautreaux. The attack resulted in Ms. Guatreaux's hospitalization for a period of two weeks, and the state asserts that he committed it with a dangerous weapon, to wit, a heavy-duty flashlight. In his first assignment of error, the defendant asserts that the evidence was not sufficient to convict him of the offence charged.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody,* 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. See *King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

*State v. Lambert,* 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27.

As applied to the litigation now before us, La.R.S. 14:33 defines battery, as "the intentional use of force or violence upon the person of another." Louisiana Revised Statutes 14:34.7(A)(1) defines aggravated second degree battery as "a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury." Additionally, La.R.S. 14:34.7(A)(2) provides that "serious bodily injury" is defined as any "bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss of impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death."

In asserting this assignment of error, the defendant argues that there exists reasonable doubt as to whether he even struck Ms. Gautreaux. Furthermore, he argues that even assuming the evidence establishes that he struck Ms. Gautreaux, at best he is guilty of the offense of simple battery. He bases the first argument on Ms. Gautreaux's credibility and his second on the fact that no weapon was introduced at trial.

Ms. Gautreaux testified that she had been living with the defendant at Melville, Louisiana, for approximately three months before December 12, 2006. She acknowledged that on the evening of December 12, she and the defendant had been ingesting Xanax and smoking crack cocaine. According to Ms. Gautreaux, when they ran out of cocaine, the defendant gave her $40.00 and sent her to a local dealer to purchase more. Ms. Gautreaux testified that she was delayed at the dealer's home and, when she did not return home as expected, the defendant went to the dealer's home, stood outside, and yelled for her to come out. According to Ms. Gautreaux, she left the dealer's house, and as she and the defendant walked toward to his house,

2

he began punching her in the stomach. She testified that the punches were landed with such force that she began to vomit and passed out. The next thing she remembered was waking up in the hospital a few days later. She remained in the hospital intensive care unit for two weeks. While she could not testify that the defendant struck her with anything other than his fists, Ms. Gautreaux did testify that the defendant had a "police-type, " heavy-duty flashlight at his home. She described it as being camouflage in color and eighteen to twenty-four inches long.

Dr. Gregory Allain treated Ms. Gautreaux for her injuries at the Opelousas General Hospital. According to Dr. Allain, Ms. Gautreaux's injuries were life threatening, primarily because she suffered renal failure from the trauma and had to be placed on dialysis. He testified that although he could not state with any medical certainty that the bruises on the patient's body were consistent with being beaten with a metal flashlight, they did appear to have been inflicted by a long object. Furthermore, he did testify with medical certainty that her injuries had been inflicted by something greater than a fist.

Ms. Gautreaux did not receive medical attention until the afternoon of December 13, when her aunt, Debra Ann Sanders, came to the defendant's home and discovered Ms. Gautreaux on the bedroom floor, severely beaten and in a semi-conscious state. According to Ms. Saunders, the defendant telephoned her that morning and informed her that Ms. Gautreaux had not come home the night before. When she left work at approximately 1:30 that afternoon, she stopped by the defendant's house and found her niece. Ms. Saunders testified that she asked her niece who inflicted her injuries, and Ms. Gautreaux replied that the defendant "beat

3

me." Ms. Saunders then ran down the street to the home of her sister, Janice Savant, to seek help.

After being informed of Ms. Gautreaux's condition, Ms. Savant ran to the defendant's house and found Ms. Gautreaux on the bedroom floor, naked and beaten. When questioned by Ms. Savant, Ms. Gautreaux also informed her that the defendant had attacked her. According to Ms. Savant, clumps of Ms. Gautreaux's hair were strung from the front room of the defendant's home in a trail to the bedroom. While looking around the front room for Ms. Gautreaux's driver's license, she observed a camouflage colored flashlight on the floor next to a bloody sock.

John Allen Brown testified that the defendant telephoned him at approximately 9:30 on the morning of December 13, 2006, and asked for a ride to the defendant's mother's house in Krotz Springs, Louisiana. He picked the defendant up at his house and drove him to Krotz Springs as requested. During the trip, the defendant informed him that he had beaten Ms. Gautreaux with a flashlight and that she was still in his home. He testified that when he returned to Melville that afternoon, he stopped by the defendant's house to check on Ms. Gautreaux. By the time he arrived there, the Melville police were already on the scene. After Melville Chief of Police John McKeel told him of the severe beating Ms. Gautreaux had endured, he told Chief McKeel what he had been told by the defendant. Mr. Brown also testified that in the past, he had seen a "police flashlight" at the defendant's home.

Chief McKeel testified that after he arrived at the defendant's house, Ms. Gautreaux identified the defendant as her assailant. He testified that he did not initially look for a flashlight at the scene of the crime because, at that time, he was not aware that a weapon had been used on Ms. Gautreaux.

4

In arguing that there exists reasonable doubt as to whether he ever struck Ms. Gautreaux, the defendant challenges Ms. Gautreaux's credibility based on her criminal record and the illegal activity she was involved in at the time of the offense. He points out that Ms. Gautreaux testified that she could not remember anything after he punched her on the way home, but had initially told Chief McKeel that the last thing she remembered was being at the dealer's house.

In rejecting this argument, we note that while Ms. Gautreaux testified at trial to a loss of memory beyond anything that happened after the walk home, three other witnesses testified that on the day after the offense, she identified the defendant as her assailant. Furthermore, the defendant left his home with Mr. Brown on the morning of December 13, and that same afternoon Ms. Gautreaux was found in that home, naked, semi-conscious, and severely beaten. These facts, together with the trail of hair starting in the living room and leading into the bedroom, and Ms. Savant's observance of the flashlight and bloody sock in the living room, could lead a rational trier of fact to conclude that the defendant beat Ms. Gautreaux with that flashlight.

In arguing that, at best, he should have been convicted of nothing more than simple battery, the defendant does not assert that a heavy-duty flashlight could not be considered a dangerous weapon. Instead, he asserts that the state failed in its burden of proof on this issue because no flashlight was introduced into evidence. This argument falls because, as noted by the state in its response to the defendant's argument, "it is well settled in Louisiana jurisprudence that no weapon need be seen by the victim, witnesses nor detective in order to convict a defendant of a crime involving a weapon." *See State v. Page*, 02-689 (La.App. 5 Cir. 1/28/03), 837 So.2d 165, *writ denied*, 03-951 (La. 11/7/03), 857 So.2d 517; *State v. Harrell*, 98-671

5

(La.App. 5 Cir.  1/26/99), 727 So.2d 1231; and *State v. Elam,* 312 So.2d 318 (La.1975).

Applying the sufficiency evaluations under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979), standard to our review of the evidence, we find that a rational trier of fact could have found that the elements of aggravated second degree battery were established beyond a reasonable doubt.  Thus, we find no merit in this assignment of error.

### *Assignment Of Error Number Two*

After the trial court pronounced sentence, the defendant moved for reconsideration of the sentence imposed.  He did so based on the testimony of Dr. Allain who had explained that redness on a person's body could be caused by cocaine abuse, as well as notations in the medical records that suggested Ms. Gautreaux's unconsciousness was induced by cocaine toxemia.  On appeal, the defendant asserts that his six-year, hard labor sentence is constitutionally excessive because the trial court did not particularize his sentence as required by La.Code Crim.P. art. 894.1.

Louisiana Revised Statutes 14:34.7(B) provides that "[w]hoever commits the crime of aggravated second degree battery shall be fined not more than ten thousand dollars or imprisoned, with or without hard labor, for not more than fifteen years, or both."  Thus, the defendant received a sentence that is less than one-half of what he could have received.  Still, a sentence which falls within the statutory limits may be excessive under the particular circumstances of a given case.  *State v. Sepulvado*, 367 So.2d 762 (La.1979).  To constitute an excessive sentence, the penalty must be grossly disproportionate to the severity of the crime or be nothing more than needless imposition of pain and suffering.  *State v. Howard*, 414 So.2d 1210 (La.1982).

6

Additionally, the trial court is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. *Id.* Thus, the question before this court is not whether imposition of another sentence would be more appropriate, but whether the trial court abused its discretion. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996).

With regard to the trial court's obligation in sentencing a defendant, La.Code Crim.P. art. 894.1(A) provides:

> When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if any of the following occurs:
>
> (1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime.
>
> (2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution.
>
> (3) A lesser sentence will deprecate the seriousness of the defendant's crime.

Additionally, the trial court must "state for the record the considerations taken into account and the factual basis therefor in imposing sentence." La.Code Crim.P. art. 894.1(C). However, in complying with Article. 894.1(C), the trial court "need not articulate every circumstance or read through a checklist of items." *State v. Anderson*, 95-1688, p. 4 (La.App. 3 Cir. 5/8/96), 677 So.2d 480, 483.

In this case, the trial court stated the following in sentencing the defendant:

> Considering the input from the defendant and the state, together with the victim impact statement, the pre-sentence investigation and guidelines set forth in the Louisiana Code of Criminal Procedure Article 894.1 and other applicable sentencing statutes, including R.S. 14:34.7, the crime upon which the defendant was convicted, the Court notes the following factors pertinent to this sentencing: The defendant is thirty-

7

nine years of age and is classified as a first felony offender; The defendant viciously beat the victim with a blunt object, for a long period of time, all over the victim's body, and he left her and notified a relative of the victim that the victim was missing. The relative found the victim at the home of the defendant. The defendant continued to deny that he had anything to do with the crime; however, upon being interviewed by the probation officer, the defendant said, "I am sorry for what happened. If drugs would not have been involved, I would not have done what I did." Saying sorry now does not express remorse to this Court. In fact, this Court specifically finds that the defendant has shown no remorse whatsoever in this matter. Additionally, there's an undue risk that during the period of a suspended sentence or a probation, the defendant will commit another crime. The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution. A lesser sentence will deprecate the seriousness of the defendant's crime, and there are no mitigating circumstances in this matter.

Regardless of Ms. Gautreaux's cocaine use and the effects thereof, the record establishes that she was beaten so severely that she spent two weeks in the intensive care unit at the hospital. The trauma to her body was such that her kidneys failed, and she had to undergo dialysis. Additionally, there is no question but that her injuries were life-threatening. Finally, the defendant has not directed this court to any mitigating circumstances that should have been considered by the trial court. We do not find that the trial court abused its discretion in sentencing the defendant. *See State v. P.M.* 00-1613 (La.App. 3 Cir. 5/2/01), 786 So.2d 857; *State v. Shorts,* 42,854 (La.App. 2 Cir. 12/19/07), 973 So.2d 894. We find no merit in this assignment of error.

### *Assignment Of Error Number Three*

In this assignment of error, the defendant asserts that he received ineffective assistance of counsel because his defense counsel failed to subpoena the drug dealer to testify at trial.

> Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court

because it provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. *State v. Lane*, 40,816 (La.App.2d Cir.04/12/06), 927 So.2d 659, 669, *writ denied*, 2006-1453 (La.12/15/06), 944 So.2d 1283. When the record is sufficient, however, allegations of ineffective assistance of trial counsel may be resolved on direct appeal in the interest of judicial economy. *State v. Ratcliff*, 416 So.2d 528 (La.1982); *State v. Lane, supra*. . . .

. . . .

The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. *See State v. Wry*, 591 So.2d 774, 778 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish that his counsel was ineffective, Eiskina first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. *See Strickland, supra*. The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. *See State v. Moore*, 575 So.2d 928, 931 (La.App. 2d Cir.1991).

*State v. Eiskina,* 42,492, pp. 2-3 (La.App. 2 Cir. 9/19/07), 965 So.2d 1010, 1013.

To be successful in this argument, the defendant must demonstrate actual prejudice. That is to say, he must show error so serious as to deprive him of a fair trial before relief may be granted. It is not enough to show an error that could have had a conceivable effect on the outcome. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984).

The record reflects that the state actually tried to subpoena the drug dealer approximately six months after the offense, but this effort was unsuccessful because the dealer could not be located. The defendant requested a continuance of the trial

9

to locate and subpoena the dealer, but the trial court rejected the request. The defendant's argument is that the dealer's testimony was necessary to impeach the victim's testimony. In making this argument, he suggests that the dealer might well have been the one who committed the offense.

Despite these assertions, nothing before us suggests that the defendant successfully showed that the drug dealer was a material witness whose testimony would most likely have changed the result of the trial. At trial, Ms. Gautreaux testified that the dealer had flirted with her, and, therefore, she was at his house longer then necessary to purchase cocaine. She admitted that she had initially lied to Chief McKeel, but explained that she did so because she still loved the defendant, and she did not want to get him into trouble. We note that in her statement to Chief McKeel, Ms. Gautreaux actually told the Chief that she had left the dealer's house and, the last thing she remembered was walking home along the levee. Moreover, when Ms. Gautreaux was at her most vulnerable, she told three different people that it was "Scott Lee" who hurt her. There was no indication in the record that the drug dealer was involved in her injuries.

This lack of evidence, coupled with Mr. Brown's testimony concerning the defendant's admission to him that he beat Ms. Gautreaux with a flashlight and Ms. Gautreaux's testimony that the defendant was her assailant, leaves us with the conclusion that, at best, the drug dealer would have testified that Ms. Gautreaux was at his home and purchased cocaine, and, at the worst, he would have denied she had been there. His testimony would not have changed the verdict. Therefore, there is no merit in this assignment of error

10

## DISPOSITION

For the foregoing reasons, the defendant's conviction and sentence are affirmed in all respects.

**AFFIRMED.**